204 P.3d 285 (2009)
2009 WY 42
In the Disciplinary Matter of Stuart H. GREENE, D.C., License Number 366,
Stuart H. Greene, D.C., Appellant (Petitioner),
v.
State of Wyoming, ex rel., Wyoming Board of Chiropractic Examiners, Appellee (Respondent).
No. S-08-0137.
Supreme Court of Wyoming.
March 25, 2009.
*287 Representing Appellant: Bill G. Hibbler, Bill G. Hibbler, P.C., Cheyenne, Wyoming.
*288 Representing Appellee: Bruce A. Salzburg, Attorney General; Michael L. Hubbard, Deputy Attorney General; Ryan Schelhaas, Senior Assistant Attorney General; Kennard F. Nelson, Senior Assistant Attorney General. Argument by Mr. Nelson.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
KITE, Justice.
[¶ 1] Two patients of licensed chiropractor Stuart H. Greene filed complaints against him with the Wyoming Board of Chiropractic Examiners (Board). Following a contested case hearing, the Board entered an order dismissing one of the complaints and indefinitely suspending Dr. Greene's license to practice as a chiropractor based on the second complaint. Dr. Greene sought review in district court, which affirmed the order. On appeal to this Court, he claims the Board's order is arbitrary, capricious, an abuse of discretion, and not in accordance with the law because of several evidentiary errors, and not supported by substantial evidence. We affirm.

ISSUES
[¶ 2] The issues for our determination are:
1. Whether the Board's order is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law because:
a. The Board denied Dr. Greene access to SS's mental health records and inquiry into her mental health;
b. The Board considered evidence and issues of which Dr. Greene received no notice;
c. The Board allowed a witness to testify who did not file a complaint against Dr. Greene;
d. The Board failed to explain its reasoning for rejecting expert witness testimony favorable to Dr. Greene; and,
e. The Board violated Dr. Greene's due process rights when it allowed access to and use of his expert witnesses' professional licensing records.
2. Whether the Board's order was supported by clear and convincing evidence.

FACTS
[¶ 3] Dr. Greene was licensed in Wyoming to practice as a chiropractor. In October of 2002, the Board received a complaint from one of his patients. Among other claims, she alleged that in the course of treating her in 2001 Dr. Greene had made sexual advances toward her. While that complaint was pending, the Board received a complaint from another patient of Dr. Greene's. The second complaint, filed by SS, alleged that Dr. Greene sexually assaulted her during treatment in November of 2003. The Board notified Dr. Greene about the complaints and he denied the allegations.
[¶ 4] The Board assigned the complaints to one of its members for investigation. Following the investigation, in 2006, the Board notified Dr. Greene that the investigating Board member together with the Wyoming Attorney General's Office (the State) intended to pursue disciplinary action against him as a result of the complaints for alleged violations of § 33-10-110 of the Chiropractic Practice Act, Wyo. Stat. Ann. §§ 33-10-101 through XX-XX-XXX (LexisNexis 2005), and Chapter 6, Section 2 of the State Board of Chiropractic Rules and Regulations (Board Rules).
[¶ 5] Section 33-10-110 provides in pertinent part:
(a) It shall be unlawful for any holder of a license according to this chapter to commit any of the following acts:
....
(vi) To be guilty of any ... unethical or unprofessional conduct likely to ... harm the public[.]
....
(b) ... [T]he board may revoke the license and certificate or suspend the license and certificate of any licensee proved guilty of any of the acts stated in section (a).
[¶ 6] Chapter 6, Section 2 of the Board Rules gives the Board the authority to suspend or revoke a license or take other disciplinary *289 action for the following reasons not set forth in the statutes:
....
(b) Immoral, unprofessional or dishonorable conduct;
(c) Practicing chiropractic in such a manner as to endanger the welfare of clients or patients;
....
(f) Engaging in ... sexual ... contact with a client or patient[.]
[¶ 7] Dr. Greene reiterated his denial of the charges and the Board scheduled the matter for hearing.[1] The State filed a petition and complaint, asserting the acts complained of were inappropriate, not valid, necessary or acceptable and outside the scope of acceptable standards of chiropractic practice. The State further alleged that in the course of investigating the complaints, another former patient of Dr. Greene's had come forward with an allegation that Dr. Greene touched her in an inappropriate way during treatment. The State sought revocation of Dr. Greene's license.
[¶ 8] Over the course of four days in March and April of 2007, the Board conducted a contested case evidentiary hearing. After the hearing, the Board entered findings of fact, conclusions of law and an order finding the State had proven by clear and convincing evidence that Dr. Greene violated § 33-10-110(a)(vi); Chapter 6, Section 2(b), (c), (f), (o) and (r) of the Board Rules; and the American Chiropractic Code of Ethics A(6), A(7), A(10) and C(2). The Board ordered Dr. Greene's license suspended indefinitely with the opportunity to apply for reinstatement upon satisfying specified conditions. Dr. Greene filed a petition for review of the Board's order in district court. *290 The district court entered an order affirming the suspension of Dr. Greene's license, and Dr. Greene appealed to this Court. While the appeal was pending, Dr. Greene filed a motion to stay the order suspending his license until the appeal was decided. We granted the motion.

STANDARD OF REVIEW
[¶ 9] We review an administrative decision as if it came directly from the agency and do not defer to the district court's ruling. Dale v. S & S Builders, LLC, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Rulings on the admission of evidence are within the sound discretion of the agency as the trier of fact; we will set aside an evidentiary determination only if the agency abused its discretion. McIntosh v. State ex rel. Wyo. Med. Comm'n, 2007 WY 108, ¶ 42, 162 P.3d 483, 494 (Wyo.2007). We review an agency's conclusions of law de novo, and affirm such conclusions only when they are in accordance with the law. Id.
[¶ 10] Disciplinary actions before licensing boards require a more exacting level of proof than typical administrative actions. Dorr v. Wyo. Bd. of Cert. Pub. Accountants, 2006 WY 144, ¶ 13, 146 P.3d 943, 949 (Wyo.2006).
A disciplinary proceeding before a licensing board is an adversary proceeding where the burden is on the complaining party to present its case in a proper manner and to state with precision the charges against the licensee. Those charges must be established by clear and convincing evidence. We have defined clear and convincing evidence to be the "kind of proof which would persuade a trier of fact that the truth of the contention is highly probable."
Id. (citations omitted).
[¶ 11] We apply the arbitrary and capricious standard when agency action prejudices a party's substantial rights or is contrary to, but does not easily fall within, the other standards of review. Id. The arbitrary and capricious standard is not meant to apply to true evidentiary questions but applies instead when, for example, an agency refuses to admit clearly admissible testimony or exhibits or fails to provide appropriate findings of fact or conclusions of law. Id.

DISCUSSION

1. Evidentiary Error
[¶ 12] Dr. Greene asserts the Board committed evidentiary error in five instances. We consider each of his claims separately. We begin with his contention that the Board erred when it denied him access to SS's mental health records and the right to inquire into her mental health.

a. Mental Health Records
[¶ 13] After receiving notice of SS's complaint, Dr. Greene attempted to obtain copies of her mental health records. SS objected to production of the records. Dr. Greene then served SS with a subpoena duces tecum to produce the records at a deposition. SS did not produce the records and declined to answer questions concerning her mental health treatment during her deposition. Dr. Greene filed a motion to compel production of the records and to require SS to appear and answer questions concerning her treatment. Following a hearing, the Office of Administrative Hearings (OAH) examiner denied the motion finding that the information Dr. Greene sought was protected by the patient-mental health professional privilege provided for in Wyo. Stat. Ann. § 33-27-123 and § 33-38-113 (LexisNexis 2005) and did not fall within any exception.
[¶ 14] Dr. Greene contends it was error to deny him access to SS's mental health information because she placed her mental health at issue by filing the complaint against him. He cites § 33-27-123(a)(vi), governing privileged communications between psychologists and patients, and § 33-38-113(a)(iii), governing such communications between professional counselors and patients, as support for his claim that the information was not privileged under the circumstances. Those provisions state in pertinent part as follows:
§ 33-27-123. Privileged communication.
(a) In judicial proceedings, whether civil, criminal, or juvenile, in administrative proceedings, and in proceedings preliminary *291 and ancillary thereto, a patient or client, or his guardian or personal representative, may refuse to disclose and may prevent the disclosure of confidential information, including information contained in administrative records, communicated to a person licensed or otherwise authorized to practice under this act, or to persons reasonably believed by the patient or client to be so licensed, and their agents, for the purpose of diagnosis, evaluation or treatment of any mental or emotional condition or disorder. The psychologist or school psychologist shall not disclose any information communicated as described above in the absence of the express waiver of the privilege except in the following circumstances:
....
(vi) Where the patient or client, by alleging mental or emotional damages in litigation, puts his mental state in issue and production of those materials by the patient or client is required by law.
§ 33-38-113. Privileged communication.
(a) In judicial proceedings, whether civil, criminal, or juvenile, in legislative and administrative proceedings, and in proceedings preliminary and ancillary thereto, a patient or client, or his guardian or personal representative, may refuse to disclose or prevent the disclosure of confidential information, including information contained in administrative records, communicated to a person licensed or otherwise authorized to practice under this act, and their agents, for the purpose of diagnosis, evaluation or treatment of any mental or emotional condition or disorder. A person licensed or otherwise authorized to practice under this act shall not disclose any information communicated as described above in the absence of the express waiver of the privilege except in the following circumstances:
....
(iii) Where such information is necessary to defend against a malpractice action brought by the patient or client[.]
Dr. Greene contends SS put her mental state in issue by filing a complaint against him with the Board and that information concerning her mental health was necessary for him to defend himself before the Board against what were essentially allegations of malpractice.
[¶ 15] The standards governing our interpretation of statutes are well-established.
We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in pari materia. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.
KO v. LDH (In re MEO), 2006 WY 87, ¶ 18, 138 P.3d 1145, 1151 (Wyo.2006). Applying these standards, we conclude that neither of the exceptions upon which Dr. Greene relies applied under the facts of this case.
[¶ 16] For the exception in § 33-27-123(a)(iii) to apply, a patient must allege mental or emotional damages in litigation. SS did not allege mental or emotional damages in litigation; rather, she was a witness in an administrative licensing proceeding before the Board to determine whether Dr. Greene had violated the Practice Act and whether his license should be suspended. No damages were recoverable in that proceeding nor did SS allege any damages. The mere fact that SS testified as a witness in the disciplinary proceeding did not place her mental status in issue, nor did it constitute a waiver of the privilege existing between her and her treating therapist. See St. Lucia v. Novello, 284 A.D.2d 591, 726 N.Y.S.2d 488, 490 (N.Y.2001) (holding a patient's testimony in a disciplinary hearing involving claims of moral unfitness to practice medicine brought against her general surgeon did not place the witness's psychological status in issue, nor did it constitute a waiver of the patient-therapist privilege).
[¶ 17] For the exception contained in § 33-38-113(a)(iii) to apply, the mental health information sought must be necessary *292 to defend against a malpractice action brought by the patient. SS did not file a malpractice action against Dr. Greene; rather, she filed a complaint with the disciplinary board and was subpoenaed to testify at an administrative hearing brought by the Board. Giving effect to the plain and ordinary meaning of the words, SS did not waive her privilege and Dr. Greene was not entitled to disclosure of her mental health information.

b. Lack of Notice
[¶ 18] Dr. Greene asserts that the Board erred in considering evidence of which he had no notice. He points specifically to the following findings of the Board:
His conduct has the appearance of professional impropriety when he hugs, kisses, moans, and rubs his groin area against his patients, and more specifically [SS]. The practice of chiropractic medicine has a definite component of touching but it is clearly unethical and a violation of the Practice Act and Board's Rules for Dr. Greene to have inserted his own affection into the therapeutic treatments he provided to [SS], including ... pressing his groin area against her.
Dr. Greene asserts he had no notice of evidence showing that he pressed his groin against SS; inserted affection into his treatments; or acted improperly with patients other than the two complaining witnesses and the witness who came forward during the investigation. Dr. Greene cites Slagle v. Wyo. State Board of Nursing, 954 P.2d 979 (Wyo.1998) as support for his contention that the Board violated his right to due process by considering this evidence without giving him prior notice.
[¶ 19] Ms. Slagle was licensed in Wyoming as an advanced nurse practitioner and treated prisoners in the Fremont County jail. The State Board of Nursing received a complaint against Ms. Slagle from one of the prisoners. The Board of Nursing requested information from Ms. Slagle concerning her standing as an advanced nurse practitioner and notified her that her license was limited to geriatric patients. The Nursing Board did not notify her concerning the prisoner complaint.
[¶ 20] Ms. Slagle, her supervising physician and the director of the nursing program where she obtained her degree sent information to the Nursing Board concerning Ms. Slagle's qualifications to treat adult and geriatric patients. The Nursing Board did not respond except by telling Ms. Slagle that she could obtain a specialty license to treat adult patients. Subsequently, the Nursing Board issued an order dismissing the inmate's complaint but finding that Ms. Slagle had violated the Nursing Board's Rules and Practice Act by treating adult patients and directing her to stop treating non-geriatric patients. Ms. Slagle continued to treat adult patients and the Nursing Board filed its own complaint against her for exceeding the scope of her license by treating non-geriatric adults. After a hearing, the Nursing Board suspended Ms. Slagle's license based in part upon findings that she continued to treat adult patients after the Nursing Board ordered her to stop and practiced fraud and deceit by submitting untruthful information in her 1993 application. The Board's complaint had not alleged either of these violations.
[¶ 21] This Court reversed, holding that the Nursing Board violated Ms. Slagle's due process rights because it did not give her notice that she was alleged to have violated the Board's earlier order and submitted false statements and yet relied on those allegations in suspending her license. Slagle stands for the principle that a licensing board may not consider in a contested case hearing matters concerning allegations of which the licensee has not been given notice. Penny v. State ex rel. Wyo. Mental Health Professions Licensing Bd., 2005 WY 117, ¶ 50, 120 P.3d 152, 175 (Wyo.2005).
[¶ 22] In contrast to Slagle, the State in this case notified Dr. Greene by letter that it intended to seek disciplinary measures against him for violations of the Board's Practice Act and Rules. The letter notified Dr. Greene that the violations involved inappropriately touching the breasts of three different patients during the course of treatment which constituted unethical, unprofessional and immoral behavior. In a separate notice of hearing, the State notified Dr. Greene that he allegedly touched SS on her *293 left breast "in addition to performing other acts which collectively, were unprofessional, inappropriate and intimidating, and consisted of the following: pressing yourself up against [her] from behind, holding her, kissing the top of her head, moaning, kneeling in front of her with your face very close to hers, attempting to place your palms against [hers] while directing her to `take (your) energy.'" The notice advised Dr. Greene that such conduct violated § 33-10-110(a)(vi), Chapter 6 of the Board's Rules, and the American Chiropractic Association Code of Ethics, specifically the Addendum Advisory Opinion: Sexual Intimacies with a Patient. The Petition and Complaint filed against Dr. Greene reiterated the above allegations involving SS.
[¶ 23] During discovery, the State disclosed to Dr. Greene notes taken during witness interviews conducted during the investigation of the complaints made against him. The notes included the following witness statements:
"Dr. [Greene] gave [PW] a hug and pushed his hips against her thigh & moved his hips back and forth.... he was partially aroused on the 1st two incidents of hip grinding."
"[A] patient ... told [the witness] that Dr. [Greene] grabbed her breast and pressed his groin up against her with a hug."
At the hearing, SS testified that Dr. Greene "was pressed up against the back of me. This included his genital area that would have been pressed up against me. I want to make that clear."
[¶ 24] The letter of intent and notice of hearing clearly notified Dr. Greene of the allegations giving rise to the disciplinary action. From documentation provided in discovery, Dr. Greene had notice of witness statements specifically describing him pressing his groin area against the first complaining witness and, "press[ing] himself against [SS] from behind." Although the disclosures to Dr. Greene did not allege that he "inserted his own affection into his treatment" of SS, they did allege that he hugged and kissed SS, moaned, and touched her breast during his treatment. Given that these actions were the basis for the Board's determination that he inserted his own affection into treatments, we find no due process violation. We also find nothing in the Board's findings suggesting that it considered evidence concerning patients other than the two complaining witnesses and a third witness who came forward during the investigation. From the record before us, there is no question that Dr. Greene had notice of the conduct and violations being alleged against him and the matters the Board considered at the hearing.

c. Non-complaining Witness Testimony
[¶ 25] Dr. Greene asserts the Board erred in allowing a non-complaining witness to testify about his conduct during her treatment in the mid-1980s. He argues that her testimony was not admissible because she did not file a complaint against him, it was improper character evidence, it was not relevant to the complaints filed by the other two witnesses, the risk of prejudice from its admission outweighed its probative value, it was so remote in time as to make it inadmissible and it was not corroborated by any other evidence.
[¶ 26] Addressing the claim that the testimony was inadmissible because the witness did not file a written complaint against Dr. Greene, we find no such requirement in any statute or rule. While a person who wishes to bring a complaint against a chiropractor is required to file a written signed complaint, there is no requirement that a patient having information relevant to proceedings against a chiropractor brought by another patient must file a complaint. The witness at issue here had information relevant to the allegations against Dr. Greene, the State disclosed her identity and expected testimony to Dr. Greene and the only limitations on her testimony at that point were those contained in the Wyoming Administrative Procedures Act (WAPA), Wyo. Stat. Ann. §§ 16-3-101 to -115 (LexisNexis 2007).
[¶ 27] Dr. Greene contends the testimony was inadmissible under Wyoming Rule of Evidence 404(b), which precludes the *294 use in court of evidence of a person's character to prove that he acted in conformity with it but allows such evidence for other purposes, such as proof of motive, opportunity, and intent. Administrative hearings are governed by WAPA, and administrative agencies acting in a judicial or quasi judicial capacity are not bound by the rules of evidence that govern trials by courts or juries. Griffin v. State ex rel. Dep't of Transp., 2002 WY 82, ¶ 11, 47 P.3d 194, 197 (Wyo.2002). The standard for admissibility of evidence at an administrative hearing is contained in § 16-3-108(a), which states in pertinent part:
... irrelevant, immaterial or unduly repetitious evidence shall be excluded and no sanction shall be imposed or order issued except upon consideration of the whole record or such portion thereof as may be cited by any party and unless supported by the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs.

(emphasis added.) The Board found the witness testimony at issue relevant to show that Dr. Greene's actions with the two complaining witnesses were not isolated events, a mistake, inadvertent or unintentional, but instead demonstrated a pattern of conduct by Dr. Greene. We hold that the Board reasonably concluded that the testimony was admissible for that purpose.
[¶ 28] Dr. Greene contends the Board abused its discretion in allowing the testimony because it concerned an alleged incident 20 years before the complaints giving rise to the disciplinary proceeding and was too remote in time to be relevant. The remoteness of alleged acts does not automatically make testimony inadmissible. Griswold v. State, 994 P.2d 920, 926 (Wyo.1999). Whether testimony should be excluded because of remoteness is a discretionary decision for the agency. We find no abuse of discretion in allowing the testimony to show a pattern of conduct by Dr. Greene.
[¶ 29] Dr. Greene asserts the evidence was more prejudicial than probative and should have been excluded for that reason. Again, the Board had the discretion to admit or exclude the evidence. The testimony was not immaterial, irrelevant or unduly repetitious and the Board was not required pursuant to § 16-3-108(a) to exclude it for any of those reasons. The Board could reasonably have concluded the testimony was the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs. We find no abuse of discretion in the Board's decision to allow the testimony.

d. Mr. Blanchard's Testimony
[¶ 30] Dr. Greene's next assertion of error concerns the testimony of Geral Blanchard, a licensed professional counselor in Wyoming, who Dr. Greene called to testify on his behalf. The Board's findings of fact contain the following concerning Mr. Blanchard:
46. Geral Blanchard (Blanchard), a licensed professional counselor in Wyoming, testified on behalf of Dr. Greene. Blanchard has been working in the field of sexual abuse, counseling, teaching, authoring, and working with both victims and perpetrators of sexual crimes for the past 36 years. Blanchard conducted a battery of tests on Dr. Greene and ruled out antisocial personality disorder and sexual addiction. However, Blanchard went on to testify that, "There was a deficit that I discovered in training and education around boundaries, the maintenance of boundaries, the development of boundaries, and a limited amount of education on the sexual dilemma that healthcare providers encounter in dealing with patients, some of the vulnerability that patients bring to healthcare providers." Blanchard referred to Dr. Greene as having a deficit in education around sexual dilemmas and the healthcare profession and the need for ongoing and continuous education in that area.
[¶ 31] Dr. Greene asserts the Board's finding is arbitrary and capricious because it makes no mention of Mr. Blanchard's testimony on direct examination concerning the factors he considers in determining whether allegations of sexual abuse are exaggerated *295 or false. Although Mr. Blanchard had never met either of the women who filed complaints against Dr. Greene, he was called as a witness for Dr. Greene to testify that individuals with a past history of unresolved sexual abuse sometimes experience transference, meaning that an experience in the present that resembles one from the past can trigger similar feelings and confusions. Mr. Blanchard also testified that in his opinion, in determining whether an allegation of sexual abuse is exaggerated or false, it is important to know whether the individual has been diagnosed with borderline personality disorder. Mr. Blanchard stressed on direct examination the importance of knowing the history of both the accuser and the accused in cases involving allegations of sexual abuse. In its finding, the Board made no mention of this testimony but focused instead on Mr. Blanchard's testimony in response to the Board's questioning about the opinions he formed from tests he performed on Dr. Greene.
[¶ 32] In support of his argument that the Board failed to mention all of Mr. Blanchard's testimony, Dr. Greene cites cases in which this Court has emphasized the importance of expert testimony in administrative proceedings involving matters not within the general knowledge of the courts. Devous v. Wyo. State Bd. of Medical Examiners, 845 P.2d 408, 418 (Wyo.1993); Billings v. Wyo. Bd. of Outfitters & Guides (In re Billings) 2001 WY 81, ¶ 18, 30 P.3d 557, 566-67 (Wyo.2001). In those cases, this Court held that without expert testimony supporting the administrative ruling, there was not substantial evidence in the record from which it could be affirmed. Those cases have no application here where the Board allowed the expert testimony.
[¶ 33] Dr. Greene also reiterates his argument that he was entitled to disclosure of SS's mental health records. He asserts the records were essential in order for the Board to assess her credibility. As discussed above, mental health records are privileged communications under Wyoming law, subject to disclosure in only limited circumstances. None of the exceptions applied in this case, and Dr. Greene was not entitled to the records. Mr. Blanchard's opinions concerning the importance of such records in making credibility determinations does not change that result.
[¶ 34] As the trier of fact, the Board was entitled to give Mr. Blanchard's testimony the weight it concluded it deserved in light of other evidence presented. McIntosh, ¶ 20, 162 P.3d at 489. In addition to Mr. Blanchard's testimony, the Board heard and considered the testimony of SS and Dr. Greene. It is apparent from its lengthy ruling that the Board fully considered all of the evidence presented and reasonably concluded that SS's testimony was credible. We find no error in the Board's failure to make findings concerning the entirety of Mr. Blanchard's testimony in its ruling.

e. Licensing Records of Dr. Greene's Experts
[¶ 35] Dr. Greene asserts that error occurred when the State obtained and used information contained in the professional licensing files of Mr. Blanchard and another expert witness, Bret Brown, D.C. Dr. Greene contends that professional licensing information is confidential and the State acted inappropriately when it obtained the information in its advisory role and then, in its prosecutorial role, used the information at the hearing.
[¶ 36] Prior to the hearing, the State supplemented its earlier disclosure statement with additional exhibits, including materials related to the licensure of Mr. Blanchard and Dr. Brown. When the hearing convened, Dr. Greene objected to the exhibits on the grounds that they were late, irrelevant, confidential, and obtained in violation of the State's obligation to keep separate its prosecutorial and advisory functions. The hearing examiner ruled that the exhibits would not be admitted "at this time" while informing the State that it could try again during the course of the hearing. The State did not attempt again to introduce the exhibits but did attempt to use some of the information contained in them during its questioning of Mr. Blanchard and Dr. Brown.
[¶ 37] In cross-examining Mr. Blanchard, the State established that he did not have a Ph.D. in psychology and the requirements *296 for licensure as a professional counselor in Wyoming might be different today than they were when he obtained his license. The State sought but failed to establish that Mr. Blanchard did not meet the requirements for licensure in Wyoming. Although the State objected to his testimony as an expert, the hearing officer overruled the objection and allowed Mr. Blanchard to testify as an expert.
[¶ 38] With respect to Dr. Greene's chiropractic expert, Bret Brown, D.C., the State asked to voir dire the witness in an effort to show that he was not qualified to testify as an expert witness. During its voir dire, the State established that Dr. Brown had been practicing chiropractic for only five years, was not a member of any national or state chiropractic panels or affiliations, had never testified as an expert in any chiropractic malpractice action, had no "knowledge base" concerning the American Chiropractic Association Code of Ethics, had no experience with the use of therapeutic touch in chiropractic practice, and, after taking the chiropractic exam twice and failing both times, successfully challenged the results on the second exam and received his license. On the basis of Dr. Brown's testimony during the voir dire examination, the State objected to Dr. Brown testifying as an expert. Counsel for the Board agreed with Dr. Greene that Dr. Brown should be accepted as an expert based on his licensure in Wyoming, commenting that the adequacy of his credentials went to the weight of his testimony not its admissibility. The hearing examiner accepted Dr. Brown as an expert witness. The State did not cross-examine Dr. Brown concerning his credentials.
[¶ 39] From this record, we conclude neither the Board nor the OAH committed any evidentiary error with respect to Dr. Greene's expert witnesses' licensing records. The hearing examiner properly declined to admit the records into evidence. The State's questions to Dr. Blanchard concerned information found in his curriculum vitae. With only one exception, the State's questions to Dr. Brown likewise did not require his licensing records. The one area of questioning that likely came from the records concerned Dr. Brown's score on one part of one exam, to which the hearing officer sustained an objection, and the fact that he obtained his license after successfully challenging his score after taking the examination a second time. While confidential licensing records concerning Mr. Blanchard and Dr. Brown may have been improperly obtained, they were not admitted into evidence for consideration by the Board. No confidential information was used in questioning Mr. Blanchard and the State's effort to use information questionably obtained about Dr. Brown to disqualify him from testifying as an expert was unsuccessful. The Board did not rely upon, or even mention, the information in its findings regarding Dr. Brown's testimony. Dr. Greene received a fair hearing and the OAH handled the records appropriately in a manner that did not violate his due process rights or materially prejudice him.
[¶ 40] Despite our conclusion that Dr. Greene's due process rights were not violated, we are concerned about the State's effort to use information concerning Dr. Brown from the Board of Chiropractic Examiners' file. Chapter 8, Section 1(a), of the Board's rules provides:
The information in files compiled by the Board concerning each chiropractor, except for Board decisions concerning licensure or certification, is confidential and shall be released only to the chiropractor to whom the record pertains, to others upon the chiropractor's notarized written consent or upon court order.
The majority of the information the State obtained concerning Dr. Brown appears to be confidential, yet there is no indication in the record that it was obtained with his consent or by court order. Under these circumstances, the assistant attorney general was not authorized to obtain and the Board was not authorized to release confidential information from Dr. Brown's file.[2]
*297 [¶ 41] We have previously emphasized the importance of separating prosecutorial and advisory functions in contested cases before licensing boards. Dorr v. Wyoming Bd. of Certified Public Accountants, 2001 WY 37, ¶ 20, 21 P.3d 735, 745 (Wyo.2001); Painter v. Abels, 998 P.2d 931, 938-39 (Wyo. 2000). We have also stressed the importance of agencies following their own rules. Id. at 938. In Dr. Greene's case, the OAH acted appropriately by not admitting the records and sustaining an objection to a question concerning confidential information obtained from the records, and no due process issue resulted. The fact remains, however, that the Attorney General's office, in its role as prosecutor, should not have had access to the records without fully complying with the applicable rules. We expect such compliance in the future.

2. Sufficiency of the Evidence
[¶ 42] Dr. Greene's final claim is that the Board's ruling was not supported by substantial evidence. Essentially, Dr. Greene asserts the only evidence presented to show that he acted improperly with SS was her testimony, she was not a credible witness, and his testimony and that of other witnesses contradicted her testimony. In determining whether clear and convincing evidence was presented to support the Board's finding we consider whether the kind of proof was presented which would persuade a trier of fact that the truth of the contention was highly probable. Dorr, ¶ 8, 21 P.3d at 741.
[¶ 43] SS testified at the hearing that she had been receiving treatments from Dr. Greene in 2003 for migraines she was having following a car accident. On the day in question, she was in one of the treatment areas when Dr. Greene came in, shut the curtains and told her to sit down on the adjustment table. She testified that this was the first time she had seen him shut the curtains. She testified that he came up very close behind her, put his left leg up on the table with his genital area pressed up against her and his arms around her. He began to rub her right earlobe, saying it would relax her neck muscles. He adjusted her neck and then continued to hold her from behind in the same position, kissed her on the top of her head and began moaning. He began to rub her breast with the thumb of his left hand. She tightened up and he stopped, saying that he thought he was touching her shoulder. He moved around in front of her, got down on his knees, placed his face very close to her face, held his palms up and told her to take his energy. SS stared at the floor until Dr. Greene left the room. She did not return to Dr. Greene for further treatment. SS's hearing testimony was consistent with her complaint, her statements to the investigative board member and her deposition testimony.
[¶ 44] In addition to SS, two other former patients of Dr. Greene testified at the hearing. PW testified that in the course of treatment in 2001, Dr. Greene placed his hand under her breast and yanked it up three times very quickly. She testified that she did not file a complaint immediately because she thought Dr. Greene was leaving Cheyenne; when she learned later that he was still practicing here, she filed a complaint with the Cheyenne Police Department (no action was taken against Dr. Greene) and the Board.
[¶ 45] BV testified that in the course of giving her a massage as part of her treatment in the late 1980s, Dr. Greene massaged her breasts. She testified that she did not file a complaint then and felt badly about not doing so. When in the course of this investigation, she was asked if she would come forward, she did so.
[¶ 46] Dr. Greene denied giving BV a massage. Concerning PW, Dr. Greene testified that one side of his thumb may have contacted her breast as he was adjusting her ribs but it was not intentional or sexually motivated. Addressing SS's allegations, Dr. Greene testified that he performed several adjustments on her on the day in question, *298 including a neck adjustment. He testified that before the neck adjustment, he rubbed her ear lobe using the auriculoproprioceptive reflex to relax the rectus capitis muscle under the skull. As he felt the muscle relax, he did the neck adjustment. The bone released very loudly, SS jumped in the air, and her skull hit Dr. Greene in the jaw. He fell back and instinctively grabbed SS because she was going to fall off the table. He realized his hand was near her breast, immediately removed it and apologized, stating he thought his hand was on her shoulder. SS started sobbing, "looked very withdrawn and very upset and very almost traumatized from the adjustment." He moved around to the front of her, asked if she was okay, and told her to put her hands up and let him give her some of his good energy. Dr. Greene denied holding SS, kissing her, moaning, intentionally touching her breast and intentionally touching her in any sexual manner.
[¶ 47] In its findings, the Board specifically found that BV, PW and SS were credible witnesses and the statements they gave during the investigation were consistent with their hearing testimony. In contrast, the Board found that Dr. Greene's testimony concerning events was sometimes not supported by his notes on patient charts. Dr. Greene testified, for example, that he had "a fantastic memory for adjustments" and remembered precisely what procedures he performed on PW and SS. His notes on the patients' charts, however, did not reflect that he ever performed the procedure he testified that he performed.
[¶ 48] The Board also found that Dr. Greene's statements during the investigation were sometimes different than his hearing testimony and his testimony on cross-examination sometimes contradicted his direct examination testimony. For example, in his initial letter denying the allegations in PW's complaint, Dr. Greene "categorically denied" the "outlandish allegations" and specifically denied ever touching her breast. At the hearing, however, he admitted on direct examination that his hand came into contact with PW's breast. Then on cross-examination, he denied touching PW's breast and said he touched below her breast.
[¶ 49] The Board also found the testimony of other non-patient witnesses contradicted Dr. Greene's testimony. The Board specifically found: "Dr. Greene's testimony was inconsistent throughout, inconsistent with SS's chart notes, inconsistent with Dr. Greene's written statement to the Board, and inconsistent with the testimony of other credible witnesses...." Having reviewed the record in its entirety, we hold that clear and convincing evidence was presented which would persuade the Board that the truth of the contentions that Dr. Greene acted improperly and violated the Board Rules and ethical standards was highly probable.
[¶ 50] The Board's order suspending Dr. Greene's license is affirmed. The stay of the suspension shall be lifted upon issuance of the mandate from this Court.
NOTES
[1] In addition to the statutory provisions and Board Rules identified in its initial letter of intent, the notice of hearing alleged Dr. Greene's conduct violated the following additional Board Rules:

Chapter 6. Suspension, Revocation or Denial of License.
Section 1. Ethics.
(a) The protection of the public health, safety, welfare and interest of the public shall be the primary guide in determining the appropriate professional conduct of all chiropractors whose activities are regulated by the Board.
(b) The current national code of ethics as promulgated by the American Chiropractic Association,... as appropriate to the individual practitioner, shall be used by the Board to provide guidelines to ethical standards for all chiropractors licensed under the Act. Any violation of the ethics shall be a violation of the rules.
Section 2. Suspension, Revocation, and Denial of Licenses and Other Disciplinary Sanctions.
....
(e) Harassment, intimidation or abuse, sexual or otherwise, or a client of patient;
....
(g) Practicing outside the areas of professional competence as established by education, training and experience;
....
(k) Exercising undue influence to exploit a patient ... for ... personal advantage to the practitioner ...;
....
(o) Violation of the current National Code of Ethics as set forth by the American Chiropractic Association;
....
(r) Willfully or negligently violating any of the provisions of the Act;
The Board notified Dr. Greene that his alleged conduct violated the following provisions of the American Chiropractic Association Code of Ethics:
A. Responsibility to the Patient
A(6) ... doctors of chiropractic ... should not exploit the trust and dependency of their patients.
A(7) Doctors of chiropractic owe loyalty, compassion and respect to their patients. Their clinical judgment and practice should be objective and exercised solely for the patient's benefit.
....
A(10) Doctors of chiropractic should maintain the highest standards of professional and personal conduct....
....
C. Responsibility to the Profession.
C(2) Doctors of chiropractic should by their behavior, avoid even the appearance of professional impropriety and should recognize that their public behavior may have an impact on the ability of the profession to serve the public. Doctors of chiropractic should promote public confidence in the chiropractic profession.
Addendum ACA Ethics Committee Advisory Opinions: ... [I]t is the opinion of the Committee that sexual intimacies with a patient is unprofessional and unethical based on the existing ethical provisions in the ACA Code of Ethics: A(6), A(7), A(10) and C(2).
The physician/patient relationship requires the doctor of chiropractic to exercise utmost care that he or she will do nothing to "exploit the trusts and dependency of the patient."
[2] We do not have the same concern with respect to the documentation involving Mr. Blanchard, which consisted of correspondence between him and the Board of Psychology, the Board of Psychology and the American Psychological Association and others relating to Mr. Blanchard's membership in the North American Association for Masters in Psychology. This information does not appear to be confidential and likely could have been obtained from various sources, including the Board of Psychology and the American Psychological Association neither of which licenses Mr. Blanchard or maintains his file since he is not a psychologist.