2011 WY 68

OFFICE OF STATE LANDS AND INVESTMENTS; Edward L. Grant, in his official capacity as Director of the Office of State Lands and Investments, Appellants (Respondents),

v.

MULE SHOE RANCH, INC., Appellee (Petitioner).

Mule Shoe Ranch, Inc., Appellant (Petitioner),

v.

Office of State Lands and Investments; Edward L. Grant, in his official capacity as Director of the Office of State Lands and Investments, Appellees (Respondents).

Nos. S-10-0181, S-10-0182.

Supreme Court of Wyoming.

April 19, 2011.

Representing Appellants in Case No. S–10–0181: Bruce A. Salzburg, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; Bridget Hill, Senior Assistant Attorney General. Argument by Ms. Hill.

Representing Appellee in Case No. S–10–0181: David M. Clark of Worrall & Greear, P.C. Worland, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   Mule Shoe Ranch, Inc. (Mule Shoe) sought to exercise its preferential right to renew a state lease.  Two Y Ranch (Two Y) submitted a competing bid at a higher rate.

The director of the Office of State Lands and Investments (State Lands Office) issued a decision requiring Mule Shoe to match the higher bid in order to exercise its preferential right. Mule Shoe requested an administrative hearing.

[¶2] The State Lands Office and Mule Shoe filed motions for summary judgment. The Board of Land Commissioners (Board) granted summary judgment to the State Lands Office, agreeing with the director's decision. Mule Shoe filed a petition for review in the district court which reversed the Board's decision and remanded the matter to the Board with instructions to direct the State Lands Office to conduct an economic analysis and make a determination as to whether the competing bid was based on fair market value. The State Lands Office appealed to this Court. Mule Shoe filed a cross-appeal. We reverse the district court's order.

## ISSUE

[¶3] We paraphrase the issue the State Lands Office presents in its appeal as follows:

Whether the district court erred in reversing the Board's decision requiring Mule Shoe to meet the highest bid offered in order to exercise its preferential right to renew its lease.

Mule Shoe states the issue as follows:

Whether the state grazing lease statutes place an upper constraint on the amount an existing grazing lessee is required to pay to match a competing bidder under Wyo. Stat. Ann. § 36–5–105(c).

[¶4] We paraphrase the issue Mule Shoe presents in its cross appeal as follows:

Whether the district court erred in remanding the case to the Board for an economic analysis and should instead have entered judgment for Mule Shoe.

The State Lands Office re-states the issue as whether the district court erred in affirming the denial of Mule Shoe's summary judgment motion on the basis that an economic analysis must be performed on Two Y's bid.

## FACTS

[¶5] The State of Wyoming owns 5,459.90 acres of land covered by State Lease No. 2–5310. The State leases the land for grazing and agricultural purposes for ten-year terms. Mule Shoe, a family ranching operation, has leased the state land covered by State Lease No. 2–5310 since 1941. On February 1, 2008, the lease was set to expire. Pursuant to Wyo. Stat. Ann. § 36–5–104 (LexisNexis 2009), Mule Shoe, and any other party interested in leasing the land, was required to submit an application to the State Lands Office.

[¶6] On October 30, 2007, the State Lands Office received an application for State Lease No. 2–5310 from Two Y. Two Y offered an annual rental payment of $45,556.00, or $28.00 per animal unit month (AUM). The State Lands Office notified Mule Shoe about the application. On November 30, 2007, Mule Shoe responded with a renewal application for the lease. Mule Shoe offered an annual rental payment of $8,476.67, or $5.21 per AUM.

[¶7] On March 25, 2008, the director of the State Lands Office issued a decision letter addressing the conflicting applications. The director found that Two Y was a qualified applicant, had an actual and necessary use for the land and available forage and had submitted the highest bid. Based upon § 36–5–105(c) (LexisNexis 2007), which gave Mule Shoe, as the holder of the expiring lease, a preferred right to renew the lease, the director conditionally awarded the lease to Mule Shoe for the next ten year term at the rate of Two Y's bid.

[¶8] On April 4, 2008, Mule Shoe exercised its preferential right by filing a written acceptance and paying the amount of Two Y's bid. Three days later, Mule Shoe filed a notice of appeal of the director's decision, asserting Two Y's $28.00 per AUM bid was not valid because it was not based on fair market value using the formula developed by the Board for the same or similar land use. The matter was referred to the Office of Administrative Hearings (OAH) for a contested case hearing.

[¶ 9] Both Mule Shoe and the State Lands Office filed motions for summary judgment. Mule Shoe argued Two Y's bid was not a valid, competing bid and was outside the statutory parameters governing the preferential right to renew. The State Lands Office asserted the plain meaning of the leasing statutes and Board rules required Mule Shoe to meet the highest bid.

[¶ 10] After a hearing, the OAH issued recommended factual findings, legal conclusions and an order granting summary judgment for the State Lands Office. The OAH concluded the state leasing statutes required Mule Shoe to meet the highest bid in order to renew the lease. The Board voted unanimously to adopt the recommended findings, conclusions and order. Mule Shoe filed a petition for review in district court, which reversed the Board. The district court concluded the State Lands Office failed to conduct an economic analysis and determine whether the highest bid was based upon fair market value as required by statute. The State Lands Office appealed to this Court.

## STANDARD OF REVIEW

[¶ 11] We review an administrative decision as if it came directly from the agency and do not defer to the district court's ruling. *Greene v. State ex rel. Wyo. Board of Chiropractic Examiners*, 2009 WY 42, ¶ 9, 204 P.3d 285, 290 (Wyo.2009). We review an agency's conclusions of law de novo, and affirm such conclusions only when they are in accordance with the law. *Id.* While the interpretation of statutes and their implementing regulations is a question of law that we review de novo, it is also settled that we defer to an agency's interpretation of its own rules and regulations unless that interpretation is clearly erroneous or inconsistent with the plain language of the rules. *Powder River Basin Resource Council v. Wyo. Dep't of Envtl. Quality*, 2010 WY 25, ¶ 6, 226 P.3d 809, 813 (Wyo.2010).

## DISCUSSION

[¶ 12] The version of § 36–5–105(c) in effect at the time State Lease No. 2–5310 was expiring and the applicants submitted their bids provided:

> An applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of W.S. 36–5–101, *shall have a preferred right to renew such lease by meeting the highest bid offered by another qualified applicant* who has actual and necessary use for the land and available forage and *whose bid is based on the fair market value, using the formula developed by the board* pursuant to W.S. 36–5–101(b), for the same or a similar use of land.

(Emphasis added.) [1]

[¶ 13] When interpreting statutory language:

> [T]he paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that rea-

---

1. The current version of § 36–5–105(c) provides:

   (c) An applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of W.S. 36–5–101, shall have a preferred right to renew such lease by meeting the highest bid offered by another qualified applicant who has actual and necessary use for the land and available forage and whose bid is *not less than the minimum fair market value as determined by the board* for the same or a similar use of land *using the formula developed pursuant to W.S. 36–5–101(b) and not more than one hundred twenty percent (120%) of the maximum fair market value as determined by the board based* on the previous year's values for the state, district or county, whichever is most localized and available, as determined by the national agricultural statistics service utilizing:

   (i) The private land lease rate per animal unit month for Wyoming grazing leases; or

   (ii) The private land irrigated or nonirrigated cropland lease rate, as applicable, for Wyoming cropland leases on irrigated or nonirrigated cropland; and

   (iii) A downward adjustment of twenty percent (20%) to reasonably reflect lessee contributions typically provided as a part of a private land grazing lease rate or a private cropland lease rate, as applicable.

   (Emphasis added.)

sonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*Dorr v. Smith, Keller & Associates,* 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo.2010) (citation omitted). We consider all statutory provisions pertaining to the same subject in pari materia. *Sorensen v. State Farm Auto. Ins. Co.,* 2010 WY 101, ¶ 13, 234 P.3d 1233, 1237 (Wyo.2010). Divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity but is not conclusive. *Wyo. Med. Center, Inc. v. Wyo. Ins. Guar. Ass'n,* 2010 WY 21, ¶ 19, 225 P.3d 1061, 1066 (Wyo.2010). Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Id.*

[¶ 14] As reflected above in paragraph 12, our inquiry concerns the meaning of the words "by meeting the highest bid offered by another qualified applicant ... whose bid is based on the fair market value, using the formula developed by the board pursuant to W.S. 36–5–101(b)." The State Lands Office argues the director correctly concluded this provision required Mule Shoe to meet Two Y's bid in order to continue leasing the land. The State Lands Office contends the statute clearly required the holder of an expiring lease to meet the highest bid, Two Y's bid was the highest bid; therefore, Mule Shoe had to meet that bid. The State Lands Office further asserts that the Board complied with the statutory requirements for performing an economic analysis and adopting a fair market value formula when it enacted ch. 4, § 6 of its rules. The State Lands Office maintains that while § 36–5–101(b) and the rules enacted pursuant to that provision make it clear the Board must establish a *minimum* price for leasing state lands, those provisions express no intent that the Board establish a *maximum* price. The State Lands Office contends this is particularly significant given that prior versions of the statute expressly required rental values to fall within a specified minimum and maximum amount.

[¶ 15] Mule Shoe contends the interpretation the State Lands Office urges, which interpretation the OAH and the Board adopted, is contrary to the plain language of the statute and legislative intent. Mule Shoe asserts § 36–5–105(c) clearly and unambiguously provided that it had a preferred right to renew the lease by meeting the highest bid based on the fair market value using the formula developed by the Board. Mule Shoe contends Two Y's bid was not based on the fair market value using the Board's formula; therefore, it was not required to meet that bid.

[¶ 16] From the wording of § 36–5–105(c) it is clear that Mule Shoe was required to meet Two Y's bid if: 1) Two Y was a qualified applicant; 2) Two Y had actual and necessary use for the land and available forage; and 3) Two Y's bid was based on the fair market value, using the formula developed by the Board pursuant to § 36–5–101(b). The first two factors are not at issue in this appeal. In determining whether Two Y's bid was "based on the fair market value using the formula developed by the board pursuant to W.S. 36–5–101(b)," it is necessary to consider § 36–5–101(b), which provides:

> **§ 36–5–101. Qualifications of lessees; lease terms; rental.**
>
> . . . .
>
> (b) *The rental of any lease awarded shall be based on an economic analysis and shall reflect at least the fair market value* for the same or similar use of the land *based upon a formula adopted by the board using the following criteria:*
>
> > (i) Readily available data averaged over an adequate number of years to remove any radical fluctuations;
> >
> > (ii) Factors which reasonably reflect the true market value of state leases;
> >
> > (iii) Parameters within which the board can be responsive to changing resource conditions, market demand and industry viability;
> >
> > (iv) Factors which reasonably reflect the contributions made by the lessee.

(Emphasis added.) This provision clearly required that the rental of State Lease No. 2–5310 be: 1) based on an economic analysis, and 2) reflect *at least* the fair market value for the same or similar land based upon a formula adopted by the Board. That is, the rental had to be based on an economic analysis and in no event could the lease be rented for less than the fair market value for such land as calculated using the Board's formula.

[¶ 17] Pursuant to § 36–5–101(b), the Board adopted the following rule:

(a) The annual rental for all leases shall be:

(i) The amount bid by the applicant, if accepted by the Board, or

(ii) As set by the Board as part of its decision in a case of conflicting applications.

However, *in no event shall the annual rental be less than the minimum rate established by subsection (b) of this section.*

(b) The minimum annual rental shall be:

(i) For grazing land, as established by formula as follows:

Private land lease rate on a per AUM basis, average for the five years preceding the current year, as estimated by the Wyoming Agricultural Statistics Service; times the five year weighted average "party ratio" for beef cattle per cwt. as established by the National Agricultural Statistics Service as an adjustment for changing resource conditions, market demand and industry viability; less 20% to reflect contributions made by the lessee.

Board of Land Commissioners Rules, ch. 4, § 6 (2001) (emphasis added). Consistent with the requirement in § 36–5–101(b) that state lease rentals reflect *at least* the fair market value for the same or similar lands, subsection (a) of the Board's rule provided that rentals may not be for less than the rate established by subsection (b), which contained the Board's economic analysis and formula for calculating the minimum rental.

[¶ 18] The parties agree that using the Board's formula, the minimum rental for State Lease No. 2–5310 was $5.21 per AUM, or $8,476.67 annually—the amount of Mule

Shoe's bid. Pursuant to the statutes and the rule, therefore, the minimum the Board could accept for the lease was the amount of Mule Shoe's bid.

[¶ 19] In contending the Board was not authorized to require it to meet Two Y's bid, Mule Shoe argues that the term "fair market value" as used in § 36–5–105(c) meant the value as determined using the Board's formula—in this case, the amount of Mule Shoe's bid. We disagree for several reasons. First, neither the statutes nor the rules enacted pursuant thereto contained any suggestion that the value arrived at by using the formula was "the fair market value" for leasing the property. Section 36–5–101(b) expressly provided that rentals must be *at least* the fair market value as calculated using the Board's formula; it did not state rentals must be *the fair market value* calculated using the formula. In addition, interpreting the provision as Mule Shoe suggests would lead to the absurd result that the Board could only accept a bid equal to the amount calculated by using the formula and could never really consider competing bids. We will not construe statutory language to reach an absurd result. *Chevron U.S.A., Inc. v. Dep't of Revenue,* 2007 WY 43, ¶ 18, 154 P.3d 331, 337 (Wyo.2007). Finally, while § 36–5–101(b) expressly provided that rentals must at a minimum reflect fair market value, nowhere did it suggest that there was a maximum value for bids the Board could accept.

[¶ 20] As statutory interpretation principles make clear, the plain and ordinary meaning of the words governs. *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney General,* 2009 WY 143, ¶ 36, 221 P.3d 306, 317 (Wyo.2009). Fair market value is defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." *Grommet v. Newman,* 2009 WY 150, ¶ 52, 220 P.3d 795, 815 (Wyo.2009), quoting *Black's Law Dictionary* 1691 (9th ed. 2009). Applying this definition in the context of the state leasing statutes in effect in 2007, the fair market value was the price the Board was willing to accept and an applicant was willing to pay. Here, the Board was willing

to accept Two Y's bid and Two Y was willing to pay the amount of its bid. We conclude Mule Shoe was required to pay that amount in order to keep the lease.

[¶ 21] In support of its assertion that it should not be required to pay the amount of Two Y's bid, Mule Shoe cites earlier versions of the leasing statutes and decisions of this Court interpreting those statutes. Mule Shoe begins with Wyo. Rev. Stat. Ann., § 91–113 (1931), which provided that the holder of an expiring lease

> may take the lease at the highest annual rental offered by any other applicant; provided, that should the highest rental offer received be unreasonably excessive and clearly out of proportion to rentals paid for lands of similar kind and character the board shall fix the rental at which the old lessee may take the lease, upon a fair and reasonable basis within the minimum and maximum limits of appraised rental values as provided in § 91–108.

Section 91–108 provided for a minimum rental of not less than 2% and maximum rental of not more than 5½% of the appraised rental value as approved by the board.

[¶ 22] Mule Shoe also cites Wyo. Compiled Stat. Ann. § 24–113 (1945), Wyo. Stat. Ann. § 36–19 (Michie 1957) and Wyo. Stat. Ann § 36–2–106 (Michie 1977) which, like § 19–108 of the 1931 statutes, provided for a minimum rental of 2% and maximum rental of 5½% of the appraised rental value as approved by the board. As we have discussed, the statute in effect in 2007 contained no language setting a maximum rental value, nor did it contain language addressing excessive or out-of-proportion offers. When the legislature omits language from a statute, we consider the omission intentional. *Stutzman v. Office of Wyo. State Engineer*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo.2006). It seems clear from the language used in the statute in effect in 2007 that the legislature intended to establish a minimum rental value, but no maximum.

[¶ 23] Mule Shoe also cites cases from this Court decided under the old statutes. In *Kerrigan v. Miller*, 53 Wyo. 441, 454, 84 P.2d 724, 729 (Wyo.1938), for example, the Court reiterated that a preferential right is a *"very substantial* right" and said the legislature intended it to be the policy of the state "to recognize equities in those who have built up a ranching business in the state which should be considered in passing upon applications for renewal of expiring leases." *Id.* Similarly, the Court in *Frolander v. Ilsley*, 72 Wyo. 342, 365, 264 P.2d 790, 799 (Wyo.1953) stated:

> School lands are, it is true, held in trust by the state, and the trust must be administered wisely and prudently so that its aim may be reasonably attained. But prudence and wisdom do not, we think, require that it must be so administered as to destroy or diminish the value of the ranching interests of the state which form a large part of the source from which our schools are nourished.

[¶ 24] There is no question in our earlier cases that the Court gave much consideration to the benefits the State receives from well-established ranching operations. While we do not minimize those benefits, we are confronted now with statutory language that is substantially different from the language before the Court in earlier cases. As the State Lands Office correctly points out, the Wyoming legislature made important changes to the state leasing statutes in 1997.

[¶ 25] Prior to 1997, § 36–5–105(a) provided that state lands must be leased in a manner inuring to the greatest benefits to the "state." In 1997, the legislature amended that section to provide that state lands must be leased in a manner inuring to the greatest benefit of the "state land trust beneficiaries." The legislature also deleted the minimum and maximum limits within which rental values were required to fall, inserting instead the language providing that acceptable bids must be "not less than fair market value, as determined by the economic analysis pursuant to W.S. 36–5–101(b)." The legislature also added the language requiring the holder of an expired license to meet "the highest bid offered which is based on the fair market value, using the formula developed by the board pursuant to W.S. 36–5–101(b)." None of the authorities cited by Mule Shoe involved these provisions; consequently, those authorities provide little guidance in

interpreting the language in the statutes in effect in 2007.

[¶ 26] There is no doubt that established ranching operations provide great benefit to the State of Wyoming. However, the statutory scheme in effect at the time Mule Shoe and Two Y submitted their bids cannot be interpreted to mean that the Board was precluded from accepting bids higher than the minimum amount calculated by using the formula set forth in ch. 4, § 6 of its rule. The statutes and the rule clearly authorized the Board to accept the higher of two competing bids in order to carry out its statutorily prescribed duty to lease state lands in a manner inuring to the greatest benefit of the state land trust beneficiaries.

[¶ 27] Given our resolution of the issues presented in the State Lands Office's appeal, it is unnecessary to address the issue presented in Mule Shoe's cross-appeal. We reverse the district court's order and remand the case for entry of an order affirming the Board's decision.