2005-NMCA-037

111 P.3d 226

**BANK OF AMERICA, N.A., Cross–Plaintiff/Appellant,**

v.

**BA MORTGAGE, LLC (A Wholly Owned Subsidiary of Bank of America, N.A.), the Estate of Rita Sanchez, Deceased, Melanie Sanchez, Personal Representative of the Estate of Rita Sanchez, Deceased, the Unknown Heirs, Devisees and Legatees of Rita K. Sanchez; Bank of America, N.A.; John Doe, Tenant Whose True Name is Unknown; Jane Doe, Tenant Whose True Name is Unknown, Cross–Defendants,**

and

**Albuquerque Home Loans, LLC, Real Party in Interest/Appellee.**

**No. 24,133.**

Court of Appeals of New Mexico.

Jan. 27, 2005.

Elizabeth M. Dranttel, Little & Dranttel, P.C., Albuquerque, NM, for Appellant.

Sylvain Segal, Law Offices of Sylvain Segal, Albuquerque, NM, for Appellee.

*OPINION*

VIGIL, Judge.

{1} A fund was created when BA Mortgage, LLC foreclosed on its mortgage and the subsequent sale of the property resulted in a surplus of $28,467.43. This appeal requires us to determine whether a junior mortgagee or the debtor's assignee of her rights of redemption and surplus is entitled to the surplus. The district court ruled that the debtor's assignee was entitled to the surplus. We hold that if the lien of junior mortgagee is valid, it is entitled to the surplus. We therefore reverse and remand for further proceedings.

**BACKGROUND**

{2} On April 5, 1999, BA Mortgage, LLC obtained a promissory note from Rita Sanchez secured by a mortgage on real property she owned. In July 2001, it filed a complaint for foreclosure against Ms. Sanchez. Ms. Sanchez died while the proceedings were pending, and her estate (Estate) was substituted as a defendant in an amended complaint.

{3} Bank of America, N.A. (Junior Mortgagee) was named as a defendant in the suit brought by BA Mortgage, LLC, because on October 22, 1999, it obtained a different promissory note from Ms. Sanchez secured by a mortgage on the same real property which was recorded on November 16, 1999. Junior Mortgagee's answer and cross-claim alleged that Ms. Sanchez had defaulted on its loan, that she remained indebted to it in the amount of $46,521.10, and requested foreclosure of the property pursuant to its mortgage.

{4} The Estate failed to answer and the property was ordered sold pursuant to a default judgment filed on August 13, 2004. In its order for default judgment, the district court recognized that Junior Mortgagee had filed a cross-claim for foreclosure "which is pending and undetermined." The court also noted that Junior Mortgagee had reserved the right to proceed on its cross-claim and that the court "retain[ed] jurisdiction of [the] proceedings for the purpose of . . . resolving [Junior Mortgagee's] crossclaim . . . [and] determining the rights of the parties in and

to any surplus monies realized from the foreclosure sale."

{5} On October 2, 2002, the property was sold for $107,000. The district court approved the sale and ordered the resulting surplus of $28,467.43 deposited into the court registry. On November 1, 2002, the Estate assigned its right of surplus in the property to Albuquerque Home Loans (Assignee) and on November 12, 2002, Assignee recorded an assignment of right of redemption it received from the Estate. Assignee does not contend, and it presented no evidence that either assignment predated the recorded lien of Junior Mortgagee.

{6} On November 21, 2002, Assignee filed an application with the district court asking that the surplus from the foreclosure sale of the property be paid to it, and five days later, it petitioned the district court to allow it to exercise its assigned right of redemption. Junior Mortgagee responded to Assignee's application, arguing that it had a higher priority claim to the surplus than Assignee because of its mortgage on the foreclosed property, and filed its own motion for judgment of foreclosure and priority claim to surplus money proceeds. Following a hearing, the district court ordered that Assignee was entitled to the surplus proceeds. Consequently Assignee obtained title to the property at a net cost of $80,315.91 by paying $108,783.34 to the district court clerk to redeem the property and then receiving the surplus of $28,467.43 from the court registry. Junior Mortgagee appeals.

**DISCUSSION**

**A. Standard of Review**

{7} This case involves the application of law to undisputed facts; we therefore review the court's ruling de novo. *See Paradiso v. Tipps Equip.*, 2004–NMCA–009, ¶ 23, 134 N.M. 814, 82 P.3d 985.

**B. Entitlement to the Surplus**

{8} G. Nelson and D. Whitman, *Real Estate Finance Law* § 7.31, at 588 (2d ed.1985), states the rule regarding the right to surplus after foreclosure:

> The major underlying principle is that the surplus represents the remnant of the eq-

uity of redemption and security wiped out by the foreclosure. Consequently, the surplus stands in the place of the foreclosed real estate and the liens and interests that previously attached to that real estate now attach to the surplus. They are entitled to be paid out of the surplus in the order of priority they enjoyed prior to foreclosure. The claim of the foreclosed mortgagor or the owner of the equity of redemption normally is junior to those of all valid liens wiped out by the foreclosure. (footnotes omitted).

■ {9} Restatement (Third) of Property: Mortgages § 7.4 (1997), states the same rule, providing that "the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority and the remaining balance, if any, is distributed to the holder of the equity of redemption." Therefore, "the claim of the holder of the foreclosed equity of redemption to the surplus is subordinate to the claims of all other holders of liens and interests terminated by the foreclosure." *Id.* cmt. b.

■ {10} It is undisputed that Junior Mortgagee recorded its lien before Assignee obtained its assignment of right of redemption and made a claim to the right to any surplus. Applying the foregoing rule, Junior Mortgagee has a higher priority claim to the surplus than Assignee. *See Pacific Loan Mgmt. Corp. v. Superior Court,* 196 Cal. App.3d 1485, 242 Cal.Rptr. 547, 551–52 (1987) (stating that a junior lienor had the right to have its secured debt paid from surplus); *W.A.H. Church, Inc. v. Holmes,* 46 F.2d 608, 611 (D.C.1931) (stating that surplus arising from foreclosure must be used to satisfy subordinate mortgages, liens, and judgments before any surplus can be turned over to the mortgagor); *Builders Supply Co. v. Pine Belt Sav. & Loan Ass'n,* 369 So.2d 743, 745 (Miss.1979) (stating that "the surplus arising from a sale under a senior lien should be applied on a junior lien"); *Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou,* 206 N.J.Super. 637, 503 A.2d 392, 394 (Ct.App.Div.1986) (stating that "surplus funds take on the character of the land, at least with respect to junior encumbrancers whose liens existed at the time of the foreclosure").

■ {11} Assignee persuaded the district court, and makes the argument on appeal, that Junior Mortgagee's failure to obtain a judgment on its lien means that Junior Mortgagee lost any right it had to the surplus. The court's view was that the junior lien was wiped out in the foreclosure, and because there was no judgment on the junior lien, the lien did not survive the foreclosure.

■ {12} We disagree. Under the general rule, the surplus stands in the place of the foreclosed real estate and the liens and interests that previously attached to the real estate now attach to the surplus. Nelson & Whitman, *supra,* § 7.31, at 589; Restatement of Prop. § 7.4. Junior Mortgagee was timely and proactive in asserting its right to any surplus. It filed a cross-claim in the foreclosure action, appeared, and argued its position. When questioned by the court, it explained that it had not yet obtained a judgment because there was no reason to do so until after the foreclosure and after it became clear there was a surplus. It explained that to maintain its status as a lienor, it only needed to have a valid lien, not a judgment. We agree with this proposition. *See* Nelson & Whitman, *supra,* § 7.31, at 589 (stating, "[i]n order to qualify for lienor status, it must be established that the claim was reduced to a lien prior to the foreclosure sale." (footnote omitted)). Moreover, in addition to its express reservation of jurisdiction, the court's order granting foreclosure recognized that there still might be additional matters to resolve, including the parties' rights to any surplus that might result from the sale. This would include the distribution of any possible surplus that might result from the sale. Junior Mortgagee's decision to make its claim and lien known, but to wait and see how things developed, was reasonable. We therefore also reject Assignee's additional argument that Junior Mortgagee did not exercise the diligence required because it never served its cross-claim on the mortgagor.

■ {13} Foreclosure is an equitable action, and the distribution of foreclosure proceeds should be governed by equitable considerations. *See Las Campanas Limited Partnership v. Pribble,* 1997–NMCA–055,

¶ 9, 123 N.M. 520, 943 P.2d 554; *see also Kankakee Federal Savings & Loan Association v. Mueller,* 134 Ill.App.3d 943, 89 Ill. Dec. 781, 481 N.E.2d 332, 334 (1985) (noting that the distribution of proceeds from foreclosure is equitable). Junior Mortgagee timely appeared and made its claim and lien known well before the sale, and continued to press its point before the surplus was distributed. We conclude that the steps taken by Junior Mortgagee, including filing its motion for judgment for foreclosure and priority claim to surplus money proceeds, were sufficient to preserve its claim to the surplus. *See id.* 89 Ill.Dec. 781, 481 N.E.2d at 333–34 (holding that junior mortgagee was entitled to its share of the surplus from foreclosure even though it initially defaulted in the senior's foreclosure action and did not appear until it filed a motion, after the foreclosure, where the junior mortgage had been set forth in the senior mortgagee's petition, the junior mortgage was admitted in the answer, and the court had preserved its right to control the future distribution of the surplus); *Morsemere,* 503 A.2d at 394–95 (allowing a junior claimant to share in the surplus even though it did not move to intervene in the senior mortgagee's foreclosure action until after the sale); *Cowan v. Stoker,* 100 Utah 377, 115 P.2d 153, 155 (1941) (holding that a motion made before the proceeds of the foreclosure sale have been distributed "and served on all parties to the suit who are thereafter given an opportunity to plead and be heard, is a proper means for opening up the judgment for the purpose of allowing a junior mortgagee to make claim to surplus funds" because the "law is interested not so much in form as in substance").

{14} We conclude that Junior Mortgagee is entitled to the surplus because it has a higher priority claim to the surplus than Assignee unless, on remand, it is determined that its lien is invalid. For these reasons, we reverse and remand for further proceedings.

{15} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.