2012 WY 76

**MICHAEL'S CONSTRUCTION, INC., a Wyoming corporation, Appellant (Plaintiff),**

v.

**AMERICAN NATIONAL BANK, Appellee (Defendant).**

**American National Bank, Appellant (Defendant),**

v.

**Michael's Construction, Inc., a Wyoming corporation, Appellee (Plaintiff).**

Nos. S–11–0209, S–11–0210.

Supreme Court of Wyoming.

May 31, 2012.

Representing Michael's Construction, Inc.: James L. Edwards of Stevens, Edwards, Hallock, Carpenter & Phillips, P.C., Gillette, Wyoming.

Representing American National Bank: Clint A. Langer of Davis & Cannon, LLP, Sheridan, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶1] After the owner of a construction project in Campbell County defaulted on its obligations to various creditors, mortgage holder Pinnacle Bank foreclosed on the real property securing its mortgage. Junior mortgage holder American National Bank (ANB) and construction lienholder Michael's Construction, Inc. (Michael's) both sought payment from the surplus funds resulting from the foreclosure proceeding. The district court declared that ANB's mortgage was superior to Michael's lien, but denied ANB's request for contractual interest from the date of foreclosure through the date of final judgment. Both parties appealed.

[¶2] We affirm the district court's order regarding the priority of liens, but reverse the order regarding interest and remand for additional proceedings consistent with this decision.

## ISSUES

[¶3] Michael's presents the following issue in Case No. S–11–0209:

> Whether the decision of the district court granting summary judgment in favor of American National Bank was correct.

ANB responds with this issue:

> Whether the district court properly determined that American National Bank's mortgage had priority over Michael's Construction, Inc.'s lien.

ANB and Michael's both identify the following issue for appeal in Case No. S–11–0210:

> Whether the district court erred in denying American National Bank the recovery of interest at the contractual rate.

## FACTS

[¶4] The parties stipulated to the facts of this case. Because the dates are important to our decision, we will list the relevant events in chronological order:

- On March 14, 2006, Anthony Ciochetti, on behalf of several related entities (hereinafter referred to as "owner"), met with Kyle Gillette of Schutz Foss Architects, P.C. regarding the construction of a day care and Montessori school in Campbell County. Mr. Gillette had a bachelor's degree in architecture and was a project manager for Schutz Foss

Architects, but he was not a licensed architect.

- On April 21, 2006, Mr. Gillette recorded his first time entry for work on the day care project.
- On April 24, 2006, a warranty deed conveying the day care real property to the owner was recorded in the Campbell County Clerk's office.
- Also on April 24, 2006, a mortgage from the owner to Pinnacle Bank encumbering the day care real property was recorded in the clerk's office.
- On May 15, 2006, Schutz Foss Architects and the owner entered into a contract for architectural services for the day care.
- On July 3, 2006, a mortgage encumbering the day care real property given by the owner to ANB to secure a corresponding promissory note was recorded in the clerk's office.
- On October 20, 2006, Michael's delivered a loader and a blade to the day care property.
- On October 30, 2006, Michael's began removing topsoil from the day care property.
- On November 6, 2006, Michael's and the owner entered into an agreement for construction services.
- On April 17, 2007, Michael's timely filed and perfected a lien statement against the real property.
- As of July 16, 2007, the owner had defaulted on its obligations to Pinnacle Bank, Michael's, Schutz Foss Architects, and ANB.
- On July 16, 2007, Pinnacle Bank commenced foreclosure proceedings pursuant to the power of sale provision in its mortgage.
- On August 21, 2007, the Campbell County Sheriff conducted a foreclosure sale. Michael's purchased the property at the sale for $400,000.
- The owner's debt to Pinnacle Bank was satisfied out of the foreclosure sale proceeds, leaving a balance of $271,968.23.
- As of August 21, 2007, the owner owed Michael's $432,980, plus accrued interest

and fees and ANB $88,123.03 in principal, plus accrued interest and fees.

[¶ 5] Because the remaining funds from the foreclosure sale were insufficient to satisfy Michael's and ANB's outstanding claims, the matter came before the district court for a declaration of priorities and distribution of the funds. ANB claimed that its mortgage had priority over Michael's lien because the mortgage was recorded prior to the commencement of construction on the project. Michael's claimed that its lien had priority because it related back to the date Schutz Foss Architects began work on the project.

[¶ 6] The parties filed competing motions for summary judgment. The district court interpreted the relevant lien priority statutory sections and ruled that ANB's mortgage had priority over Michael's lien. The district court also ruled that ANB was entitled to contractual interest through the date of foreclosure. ANB filed a motion to amend the summary judgment order to include interest, at the rate specified in the promissory note, until the date of judgment. Michael's argued that the district court had discretion to limit the amount of interest awarded to ANB after the foreclosure sale and, as a matter of equity, any interest awarded should be limited in order to make more of the surplus funds available to satisfy its construction lien. The district court agreed with Michael's and entered an order awarding ANB interest at the contractual rate "only from the date of default until the date of foreclosure...."

[¶ 7] Michael's appeal in Case No. S–11–0209 challenges the district court's decision on the priorities of the parties' liens, and ANB's appeal in Case No. S–11–0210 contests the district court's interest award.

## STANDARD OF REVIEW

[¶ 8] This case was determined on summary judgment. Summary judgments are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

*Grynberg v. L & R Exploration Venture*, 2011 WY 134, ¶16, 261 P.3d 731, 735–36 (Wyo.2011) (citations omitted).

[¶9] The lien priority issue requires us to interpret the relevant statutes, which involves a question of law and *de novo* review. *J & T Properties, LLC v. Gallagher*, 2011 WY 112, ¶8, 256 P.3d 522, 524 (Wyo. 2011); *Vogel v. Onyx Acceptance Corp.*, 2011 WY 163, ¶21, 267 P.3d 1057, 1063 (Wyo. 2011). In addition, although Michael's insists the correct standard for reviewing the interest award is the abuse of discretion standard, this case requires us to determine whether the district court had discretion in the first place to reduce the amount of interest due ANB. That question is one of law, which we review *de novo*. *See, e.g., Platt v. Platt*, 2011 WY 155, ¶14, 264 P.3d 804, 807 (Wyo.2011) (holding the question of whether the district court had discretion to modify a partition order made by a court commissioner was reviewed *de novo* ).

# DISCUSSION

## A. *Lien Priority*

[¶10] Michael's claims the district court erred by concluding the date for its lien priority was the first day it performed actual construction work on the building site in October 2006. It argues that, under the relevant statutory provisions, its lien priority date should have related back to when the architectural firm started work on the project in the Spring of 2006, making its lien superior to ANB's mortgage recorded on July 3, 2006.

[¶11] Wyo. Stat. Ann. § 29–1–305 (Lexis-Nexis 2009) [1] set out the lien priority rules which apply in this case and stated in pertinent part:

(a) Except as provided in this section the liens provided by this title shall be on an equal footing without reference to the date of the filing of the lien statement.

(b) Any lien perfected as provided by this title attaches to the materials, machinery or supplies furnished and improvements made in preference to any subsequent lien, security interest or mortgage under any other provision of law which has been perfected upon real or personal property, including a leasehold interest, against which the lien is claimed.

(c) Any lien, security interest or mortgage which has been perfected upon real

---

1. This section was repealed effective July 1, 2011. Wyo. Sess. Laws 2010, ch. 92, § 3. However, Wyo. Sess. Laws 2010, ch. 92, § 4 stated: "The provisions of this act shall apply to all projects commenced on or after July 1, 2011. Any projects commenced prior to July 1, 2011, shall be governed by the lien procedures in title 29 that existed prior to July 1, 2011." Consequently, § 29–1–305 applies in this case.

The current lien priority statute is found at Wyo. Stat. Ann. § 29–1–402 (LexisNexis 2011) and states:

(a) Except as provided in this section, the liens provided by this act shall be on an equal footing without reference to the date of the filing of the lien statement.

(b) Any lien perfected in compliance with this act attaches to the real property, fixtures, materials, machinery or supplies furnished and improvements made in preference to any subsequent lien, security interest or mortgage under any other provision of law which has been

perfected upon real or personal property, including a leasehold interest, against which the lien is claimed.

(c) Any lien, security interest or mortgage which has been perfected upon real or personal property or upon a leasehold interest prior to the commencement of any construction work or repair of the premises or property, except as provided by chapter 7 of this act, or W.S. 29–8–102 relating to liens for the production of farm products under contracts executed, entered into, renewed or substantively amended on or after July 1, 2001, shall have priority.

(d) Where a sale is ordered by the court on foreclosure of any lien provided by this act and the proceeds from the sale are insufficient to discharge in full all of the liens, the proceeds shall be prorated among the several lien claimants according to the amounts of their respective claims.

or personal property or upon a leasehold interest prior to the commencement of any construction work or repair of the premises or property . . . shall have priority.

(d) Where a sale is ordered by the court on foreclosure of any lien provided by this title and the proceeds from the sale are insufficient to discharge in full all of the liens, the proceeds shall be prorated among the several lien claimants according to the amounts of their respective claims.

[¶ 12] In order to decide this case, we must interpret the statutory language by applying the following principles:

[Our] paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

*Office of State Lands and Invs. v. Mule Shoe Ranch, Inc.*, 2011 WY 68, ¶ 13, 252 P.3d 951, 954–55 (Wyo.2011), quoting *Dorr v. Smith, Keller & Assoc.*, 2010 WY 120, ¶ 11, 238 P.3d 549, 552 (Wyo.2010). *See also, Vogel*, ¶ 21, 267 P.3d at 1063. The determination of whether a statute is clear or ambiguous is a matter of law for the court. *Office of State Lands*, ¶ 13, 252 P.3d at 955.

[¶ 13] In ascertaining the meaning of a statutory provision, "all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony." *Mountain Cement Co. v. South of Laramie Water & Sewer Dist.*, 2011 WY 81, ¶ 13, 255 P.3d 881, 885 (Wyo.2011). When the language is clear, we give effect to the ordinary and obvious meaning of the words employed by the legislature. *SLB v. JEO*, 2006 WY 74, ¶ 8, 136 P.3d 797, 800 (Wyo.2006).

[¶ 14] The district court relied upon § 29–1–305(c) in ruling that ANB's mortgage had priority over Michael's lien. That provision gave priority to "[a]ny lien, security interest or mortgage which has been perfected upon real or personal property . . . prior to the commencement of any construction work or repair of the premises or property." Section 29–1–305(b) states the corollary—any construction lien properly perfected has preference over "any subsequent lien, security interest or mortgage." Thus, the "commencement of any construction work" language set out in subsection (c) provides the line of demarcation for establishing the relative priorities of claimants and the meaning of that phrase is critical to our decision in this case.

[¶ 15] Michael's maintains that, under § 29–1–305, any construction lien relates back to the commencement of the project, which includes preconstruction services such as architectural design work. *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.*, 750 P.2d 1324, 1327 (Wyo.1988) confirmed that the intent of § 29–1–305(b) was to relate all construction liens back to the commencement of the project. We held the lien of a subcontractor who began work on a project after a mortgage was recorded related back to the commencement of construction by the original contractor. Because construction was commenced prior to the recording of Norwest Bank's mortgage, the subcontractor's lien had priority. *Id. Thatcher* does not, however, directly answer the question of whether architectural services are included within the meaning of "commencement of any construction work" in § 29–1–305(c).

[¶ 16] Applying our rules of statutory interpretation, we conclude the language of § 29–1–305(c) is clear. The ordinary and obvious meaning of "construction" is "the process or act of constructing." *Webster's Third New Int'l Dictionary* 489 (2002). "Construct" is defined as "to put together substances or parts, systematically, in order to make or build (a building, bridge, etc.); assemble[.]" *Id.* Similarly, Black's Law Dictionary (6th Ed. 1990), defines "construct" as "[t]o build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order."

Thus, the plain meaning of construction or "construction work" contemplates actual physical work on the building site.

[¶ 17] Other jurisdictions have interpreted their lien priority statutes as requiring actual, visible construction work on the project site to trigger the priority date. In *Walker v. Lytton Savings and Loan Assoc.*, 2 Cal.3d 152, 84 Cal.Rptr. 521, 465 P.2d 497 (1970), the California Supreme Court interpreted that state's lien priority statute, which stated that mechanics' liens were "preferred to any . . . deed of trust . . . or other encumbrance . . . which may have attached subsequent to the time when the building, improvement . . . was commenced." *Id.*, 84 Cal.Rptr. at 524 n. 4, 465 P.2d 497. The court ruled that architectural services did not trigger the lien priority statute, stating "the general rule is that such a lien does not attach unless and until [c]onstruction has been undertaken by the doing of actual visible work on the land or the delivery of construction materials thereto." *Id.*, 84 Cal. Rptr. at 524, 465 P.2d 497.

[¶ 18] In *Rupp v. Earl H. Cline & Sons, Inc.*, 230 Md. 573, 188 A.2d 146 (Md.Ct.App. 1963), the court was asked to determine the priorities of a deed of trust and a mechanics' lien to the proceeds of a foreclosure sale. The Maryland statute at issue stated that lienable work was given preference to a deed of trust which was recorded after "commencement of the building." *Id.* at 148. The court stated that

> before there can be the *commencement of a building* which would give a mechanics' lien claimant a preference over a recorded mortgage there must be (i) a manifest commencement of some work or labor on the ground which everyone can readily see and recognize as the commencement of a building and (ii) the work done must have been begun with the intention and purpose then formed to continue the work until the completion of the building. If either of these elements is missing then there has been no 'commencement of the building' within the meaning of § 15 of Art. 63.

*Id.* at 149 (emphasis in original).

[¶ 19] Other states, such as Nevada and Arkansas, have statutes which specifically define "commencement of construction" or similar language. In Arkansas, the lien priority statute stated that liens for labor performed or material or fixtures furnished shall "date from the time that the construction or repair first commenced" and had priority over all encumbrances that attached "subsequent to commencement of construction. . . ." *May Constr. Co. v. Town Creek Constr. & Dev., LLC*, —— S.W.3d ——, 2011 WL 2477185 (Ark.2011). The statute specifically stated that "[c]onstruction or repair commences when there is a visible manifestation of activity on real estate that would lead a reasonable person to believe that construction . . . has begun or will soon begin. . . ." *Id.* Similarly, in Nevada, the lien priority statute stated that mechanics' liens had priority over any encumbrance which attached "after the commencement of construction of a work of improvement." "Commencement of construction" was defined in Nevada statutes as the date on which: "1. Work performed; or 2. Materials or equipment furnished in connection with a work of improvement, is visible from a reasonable inspection of the site." *J.E. Dunn Northwest, Inc. v. Corus Constr. Venture, LLC*, 249 P.3d 501, 505 (Nev.2011). The Nevada Supreme Court noted that, while the statutory definition was not adopted until 2003, the court had recognized since 1977 that "visible, on-site construction is required for mechanics' liens to take a priority position over a subsequently recorded deed of trust." *Id.* at 504, citing *Aladdin Heating v. Trustees, Cent. States*, 93 Nev. 257, 563 P.2d 82, 84 (1977). Thus, many cases interpret "commencement of construction" and similar language as requiring visible, on-site manifestations of construction activity to trigger the priority date for construction liens. Under those rulings, off-site preconstruction activities, like architectural services, are insufficient to qualify as "commencement of construction." *See also, Williams & Works, Inc. v. Springfield Corp.*, 408 Mich. 732, 293 N.W.2d 304, 306–07 (1980) (holding the Michigan lien priority statute did not include non-visible offsite engineering services as commencement of building or improvement for fixing mechanic's lien priority).

[¶ 20] Michael's directs us to one case which reached the opposite conclusion— *Bankers Trust Co. v. El Paso Pre–Cast Co.*, 192 Colo. 468, 560 P.2d 457 (1977). The Colorado lien priority statute stated that all mechanics' liens "shall relate back to the time of the commencement of work under the contract between the owner and the first contractor." The court stated that, since the lien priority statute referred to the "first contractor" and architects and engineers were contractors within the contemplation of the mechanics' lien laws, the lien priority dated from the commencement of the preconstruction work. The decision was based, in part, on the principle that "mechanics' lien laws should be construed in favor of lien claimants." *Id.* at 461.

[¶ 21] In this case, the district court concluded "[t]he requirement of a visible, on-site commencement of construction work … is consonant with Wyoming principles," and we agree. The Wyoming legislature's use of the term "construction work" in § 29–1–305(c) rather than simply "work" to establish the date of priority is significant. The plain meaning of "construction" includes the concept of actual, visible on-site building or assembly activities. That distinguishes our statute from Colorado's, which referred only to commencement of "work." Moreover, while Colorado has a policy that mechanics' liens should be construed in favor of lien claimants, we have consistently stated the opposite:

> Mechanics' liens were not recognized at and are in derogation of common law so there must be full compliance with legislative requirements. *Arch Sellery, Inc. v. Simpson*, Wyo.1959, 346 P.2d 1068. Statutory lien laws must be strictly construed and their scope cannot be extended. *Cities Service Oil Company v. Pubco Petroleum Corporation*, Wyo.1972, 497 P.2d 1368.

*American Buildings Co. v. Wheelers Stores*, 585 P.2d 845, 847 (Wyo.1978). *See also, Winter v. Pleasant*, 2010 WY 4, ¶ 3, 222 P.3d 828, 832 (Wyo.2010).

**2.** Effective July 1, 2011, the word "title" was replaced with "act." Wyo. Sess. Laws 2010, ch.

[¶ 22] Michael's argues that the legislature intended the commencement of architectural and other preconstruction services to establish the priority date for construction liens. It supports its position with several definitions set forth in Wyo. Stat. Ann. § 29–1–201 (LexisNexis 2011):

(a) Except as otherwise provided, as used in this title:[2]

(i) "Contractor" means:

(A) A person employed by and contracting with an owner to improve an owner's property including:

(I) An architect;

(II) A professional engineer; and

(III) A surveyor.

. . . .

(iii) "Improve or improvement" means:

(A) Demolition, erection, alteration or repair of any property for its permanent benefit;

(B) Any work performed or material furnished for the permanent change of any real property; and

(C) Materials manufactured pursuant to contract.

. . . .

(vii) "Work" shall be as requested, authorized or ratified under contract.

[¶ 23] Because, under § 29–1–201, "architects" are included within the definition of "contractors," "improvement" includes "any work performed … for the permanent change of any real property," and "work" means as ratified under a contract, Michael's argues that the legislature intended architectural services to be included in the definition of "any construction work" in § 29–1–305(c) for determining the date of lien priorities. Michael's insists that if the beginning of architectural services does not set the date for priority, then architects and other preconstruction service providers are effectively denied a lien, which is contrary to the intent of the lien statutes.

[¶ 24] First, we note that the definitions stated in § 29–1–201 use the term "work"

92, § 2.

instead of "construction work" as used in § 29–1–305(c). As our earlier analysis of the language of § 29–1–305(c) makes clear, the legislature's choice to modify "work" with the term "construction" is important because it introduces the concepts of actual building and assembly activities into the statutory language. Thus, the definition of "work" without the modifier "construction" is of little use to our analysis.

[¶ 25] Other jurisdictions have faced similar arguments that, because preconstruction service providers have the right to claim a lien, the date of their services should provide the date of priority. They have concluded there is a distinction between the designation of proper lien claimants and the determination of priority among lien claimants. *See, e.g., Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.,* 784 P.2d 1217, 1221 (Utah Ct.App.1989); *J.E. Dunn Northwest,* 249 P.3d at 507–08. In *Williams & Works,* 293 N.W.2d at 310–11, the mechanic's lien claimant argued that, by expanding the scope of lienable work to include engineering services, the Michigan legislature intended the date of priority to relate back to the commencement of such offsite preconstruction services. The Michigan Supreme Court stated:

> [I]t [is] unreasonable to believe the Legislature intended to indirectly change § 9(3), containing the traditional and well-established rule requiring a visible, on-site commencement of construction in order to establish priority, by the simple expansion of the lienable services outlined in a different section[.]

*Id.* at 311.

[¶ 26] Likewise, we do not believe the Wyoming legislature meant to indirectly change the date of priority from the plain meaning of "commencement of any construction work" by including architects and other preconstruction service providers in the definition of lien claimants. Contrary to Michael's argument, architects, etc. are not left "unprotected" by our determination. They are still given a lien, with the date of priority simply being the date of actual construction activities.

[¶ 27] Finally, Michael's argues that because ANB had actual notice that the architects were working on the project by signage placed on the property and an article in a local newspaper prior to the recording of the mortgage, its lien should have priority over the mortgage. We disagree. The legislature made a determination that the date of lien priority was the date of "commencement of any construction work." We cannot disregard the legislature's choice and impose a different date based upon actual notice of offsite work being performed. *See generally, Williams & Works,* 293 N.W.2d at 314 (holding the fact that a mortgage holder had actual notice of preconstruction services did not affect the priority determination because the statute stated that a mortgage filed prior to the "commencement" of the building had priority). We affirm the district court's determination that ANB's mortgage was superior to Michael's construction lien.

### B. Interest Award

[¶ 28] The promissory note given by the owner to ANB included the following provisions:

> 2. PROMISE TO PAY. For value received, I [the owner] promise to pay you [American National Bank] ... the principal sum of $99,500.00 (Principal) plus interest from June 30, 2006 on the unpaid Principal balance until this Note matures or this obligation is accelerated.
>
> 3. INTEREST. Interest will accrue on the unpaid Principal balance of this Note at the rate of 9.250 percent (Interest Rate).

The parties stipulated:

> As of August 21, 2007, the date of the foreclosure sale, Defendant American National Bank was owed the following sums:

| | |
|---|---|
| Principal sum | $88,123.03 |
| Accrued Interest | $ 1,607.71 |
| Attorney's fees | $ 1,756.16 |
| Total | $91,486.90 |

[¶ 29] In granting summary judgment in favor of ANB, the district court awarded it the "principal amount due and owing under its Promissory Note [and] interest (interest at the pre-judgment rate calculated from the time of default until foreclosure together

with its share of the interest earned on the sums held by the Clerk of District Court in this matter)[.]" ANB filed a motion to amend the summary judgment order to include interest at the contractual rate through the date of the court's final judgment. It requested the "following sums be paid from the surplus foreclosure proceeds held by the Court:

| | |
|---|---|
| Principal sum | $88,123.03 |
| Accrued interest | $26,967.45 (accruing at a rate of $22.64/day) |
| Attorney's fees and expenses | $42,383.23 |
| Future attorney's fees | $ 5,000.00 |
| Total | $162,473.31 |

plus additional interest after 9/14/10 to be determined by the court."

[¶ 30] Michael's countered that, although ANB had the right under the terms of the promissory note to collect interest through the date of the final judgment, the district court had discretion to limit the amount of interest after the foreclosure sale. Michael's stated that, under principles of equity, it was proper to limit the amount of interest awarded to ANB because the accrued interest and requested attorneys fees "are in excess of eighty percent (80%) of the principal sum . . . of [the] Bank's claim;" Michael's is the source of the surplus funds because it purchased the property at the foreclosure sale and "every dollar awarded to [American National] Bank as interest is born[e] by Michael's;" the combined claims of Michael's and ANB are "far in excess" of the surplus foreclosure proceeds; and neither ANB nor Michael's is "blameworthy or guilty of bad faith conduct." The district court was persuaded by Michael's argument and concluded that it had discretion to limit ANB's claim for contractual interest to the period from default until foreclosure and award the parties proportional shares of the interest earned on the funds after the foreclosure.

---

3. There are certain instances where courts have recognized that equitable principles may be applied to reduce a lienholder's recovery. Typically, this involves situations where there are multiple liens of equal priority and insufficient funds to pay all such lienholders in full or "encumbrancers [who] have been given security interests on separate estates" of the foreclosed property. *See, e.g., Hudson Valley Bank v. Kissel,* 303 Conn. 614, 35 A.3d 260, 269 (2012); *Spring Coal Co. v.*

[¶ 31] The district court grounded its decision on the notion that foreclosure is an equitable proceeding. Michael's cites *Bank of America, N.A. v. BA Mortgage, LLC,* 137 N.M. 368, 111 P.3d 226 (N.M.Ct.App.2005) as authority for this position. The New Mexico court of appeals stated in that case: "Foreclosure is an equitable action, and the distribution of foreclosure proceeds should be governed by equitable considerations." *Id.* at 229. The New Mexico court did not, however, use that statement to support disregarding the contracts which created the liens and awarding a lienholder only part of its rightful recovery on the basis of equitable principles.[3]

[¶ 32] The *Bank of America* court explained that equitable concepts are associated with substituting the surplus foreclosure proceeds for the mortgaged property:

> G. Nelson and D. Whitman, *Real Estate Finance Law* § 7.31, at 588 (2d ed. 1985), states the rule regarding the right to surplus after foreclosure:
>
> The major underlying principle is that the surplus represents the remnant of the equity of redemption and security wiped out by the foreclosure. Consequently, the surplus stands in the place of the foreclosed real estate and the liens and interests that previously attached to that real estate now attach to the surplus. They are entitled to be paid out of the surplus in the order of priority they enjoyed prior to foreclosure. The claim of the foreclosed mortgagor or the owner of the equity of redemption normally is junior to those of all valid liens wiped out by the foreclosure. (footnotes omitted).
>
> Restatement (Third) of Property: Mortgages § 7.4 (1997), states the same rule, providing that "the surplus is applied to liens and other interests terminated by the

---

*Keech,* 239 F. 48, 51–52 (4th Cir.1916). This concept is consistent with § 29–1–305(d) which required proration of the proceeds of a lien foreclosure sale among lien claimants of the same priority when the proceeds of the sale were insufficient to discharge in full all of the liens. Such precedent does not, however, govern our decision in this case because we have two parties claiming against the same estate and one is clearly superior to the other.

foreclosure in order of their priority and the remaining balance, if any, is distributed to the holder of the equity of redemption." Therefore, "the claim of the holder of the foreclosed equity of redemption to the surplus is subordinate to the claims of all other holders of liens and interests terminated by the foreclosure." *Id.* cmt. b.

*Bank of America,* 111 P.3d at 227–28. *See also,* 59A CJS *Mortgages* § 1330 (recognizing that a junior lienholder's lien against the encumbered property, although terminated by a foreclosure, is transferred in equity to the surplus proceeds from the foreclosure sale). Thus, as the quoted excerpt from *Bank of America* makes clear, the New Mexico court of appeals understood that an equitable conversion of a lien on encumbered property to the surplus proceeds from a foreclosure sale occurs after foreclosure, and liens should be paid out of the surplus in the order of priority they enjoyed prior to foreclosure. The court did not use equitable principles to deny the more senior lienholder any part of its claim to the surplus proceeds.

[¶ 33] Like *Bank of America,* Wyoming cases also confirm that foreclosure is an equitable action. *See, e.g., McNeill Family Trust v. Centura Bank,* 2003 WY 2, ¶ 9, 60 P.3d 1277, 1282 (Wyo.2003) and cases cited therein. However, we have consistently limited the application of equitable concepts in foreclosure cases when a contract and/or statute governs the outcome. For example, in *Countrywide Home Loans, Inc. v. First National Bank of Steamboat Springs, N.A.,* 2006 WY 132, ¶ 22, 144 P.3d 1224, 1230–31 (Wyo.2006), we refused to apply the doctrine of equitable subrogation to defeat the priority of mortgages as established by Wyoming's recording statutes. Similarly, in *Thatcher,* we refused to apply equitable principles to hold that a mortgage recorded after construction commenced on a golf course had priority over construction liens even though the funds provided by the mortgagee were used to finish the project and pay the owner's outstanding debts. *Id.* at 1326–27. We stated that the legal principles expressed in the lien priority statutes could not be ignored in favor of equitable principles. *Id.* Both of these cases confirm that a court should not,

in the context of foreclosures, routinely use concepts of equity to undermine legal principles.

[¶ 34] The district court concluded it had the discretion to limit the amount of interest ANB could recover from the surplus foreclosure proceeds. This decision seems to assume that a contractual right to interest is somehow inferior to the right to collect the principal. The importance of the contractual right to interest was eloquently discussed in *Spring Coal,* 239 F. at 52, quoting *Central Trust Co. v. Condon,* 67 F. 84 (6th Cir.1895):

'In the distribution of the proceeds of a common security between liens of different priorities, we know of no principle by which interest can be stopped on the amount of the superior lien until its satisfaction. As between [different claimants,] the [superior claimants] are entitled to interest to the day of payment.'

The *Spring Coal* decision also stated: "'Principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full[.]'" *Id.,* quoting *American Iron Co. v. Seaboard Air Line Railway,* 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949 (1911). With regard to the authority of courts to disregard the terms of a contract, the court stated: "Courts of equity no more than courts of law have power to make contracts for persons or corporations, nor can courts substitute their judgment for the judgment of the parties to a contract." *Spring Coal,* 239 F. at 51.

[¶ 35] Other authorities have recognized that a prior lienholder is entitled to full payment before lienholders of lesser priority are allowed to share in the surplus funds. "Generally, the rights of successive junior lienholders are in order of priority and, between two successive junior lienholders, prior junior lienholder is entitled to satisfaction in full before any payment to lienholder of lesser priority." 59A CJS *Mortgages* § 851. While not directly addressing the issue of whether a senior lienholder is entitled to full payment of accrued interest before a junior lienholder can recover from surplus foreclosure proceeds, Wyo. Stat. Ann. § 34-4-113 (Lexis-

Nexis 2011) indicates that is the case. Section 34–4–113 states in relevant part:

> (b) If the foreclosing mortgagee receives a demand for the proceeds ... by the holder of a subordinate or junior mortgage or other lien ... proceeds remaining after distribution [to the foreclosing lienholder] shall be paid over ... to the subordinate mortgagees or lienholders **in accordance with their priority and to the extent of their interest.**

(emphasis added). The fact that the statute refers to the priority of the lienholders and states that payment shall be made "to the extent of their interest" indicates the legislature intended that each lienholder be paid in accordance with its priority and in full before the next lienholder in the priority queue is paid. *See also, Hudson Valley Bank,* 35 A.3d at 269 (holding that disregarding lien priority and applying equitable apportionment would be improper under the circumstances where a single property is encumbered by two mortgages of different priority).

[¶ 36] Here, § 29–1–305 clearly gave ANB's mortgage priority over Michael's lien. The terms of the promissory note included payment of interest through the time of judgment. ANB's right to interest was as important a contractual provision as its right to collect the principal. ANB will be made whole and paid in full only upon an award of contractual interest for the entire period. We conclude, therefore, that the district court did not have the discretion to limit ANB's recovery by denying it interest at the contractual rate from the time of foreclosure through final judgment. We remand for further proceedings to determine the amount of interest due ANB under the promissory note for that time period.

[¶ 37] Affirmed in part, and reversed and remanded in part.