# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 63

### APRIL TERM, A.D. 2013

#### May 21, 2013

WESTERN WYOMING
CONSTRUCTION CO., INC.,

Appellant
(Plaintiff),

v.

S-12-0193

BOARD OF COUNTY
COMMISSIONERS OF SUBLETTE
COUNTY, WYOMING,

Appellee
(Defendant).

*Appeal from the District Court of Sublette County*
The Honorable Marvin L. Tyler, Judge

*Representing Appellant:*
    Devon Petersen of Hooper-Strike Law Offices LLC, Lander, Wyoming.

*Representing Appellee:*
    Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

*Before KITE, C.J., HILL, BURKE, DAVIS, JJ., and GOLDEN, J., Retired.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1] Western Wyoming Construction Co., Inc. (WWC) submitted a bid for a highway project in Sublette County, Wyoming. The Board of County Commissioners of Sublette County (Commissioners) awarded the contract to another company whose bid was higher than WWC's. WWC filed a complaint in district court for an order awarding it the contract for the project. The Commissioners filed a motion for summary judgment which the district court granted. WWC appeals from the summary judgment order. We reverse and remand for further proceedings consistent with this opinion.

## ISSUES

[¶2] WWC presents the issue for this Court's consideration as follows:

> Whether pursuant to W.S. § 16-6-102(a) it is an abuse of discretion and, therefore, illegal for a Board of County Commissioners to refuse to award a public works contract to the lowest responsible resident bidder on the basis that the next lowest bid is not significantly higher and was submitted by a firm from the same county.

[¶3] The Commissioners restate the issues as follows:

> 1. Does a Board of County Commissioners have a right to exercise any discretion in awarding a public works contract? Subsumed within the question is the following subpart:
>    (a) Does Wyo. Stat. Annot. § 16-6-102(a) that allows for a 5% resident preference, foreclose the exercise of discretion in awarding a public works contract between resident bidders?
>
> 2. Was [WWC] a "responsible and responsive qualified Bidder" entitled to an award of the contract pursuant to the terms of the bid documents?

## FACTS

[¶4] On September 6, 2011, Sublette County issued an invitation for bids for a reconstruction project on Horse Creek Road in Sublette County. WWC, a contractor based in Lander, Wyoming, submitted a bid for $4,232,854.50. The next lowest bid, submitted by a contractor based in Sublette County, was for $4,241,074.10. The County awarded the contract to the Sublette County contractor.

[¶5] WWC filed a complaint in the district court asserting that it had been prequalified by the Wyoming Department of Transportation to do the type of work required on the Horse Creek Road project and as a certified resident of Wyoming it was qualified for a five percent preference when bidding on public works projects in the State. WWC further asserted that Wyo. Stat. Ann. § 16-6-102(a) (LexisNexis 2011) mandated that the contract for the Horse Creek Road project be awarded to it because it was a responsible certified Wyoming resident and had submitted the lowest bid. Section 16-6-102(a) states in pertinent part:

> **§ 16-6-102. Resident contractors; preference limitation with reference to lowest bid or qualified response; . . .**
>
> (a) If a contract is let by . . . any county . . . for any public work or improvements, the contract shall be let, if advertisement for bids or request for proposal is not required, to a resident of the state. If advertisement for bids is required, the contract shall be let to the responsible certified resident making the lowest bid if the certified resident's bid is not more than five percent (5%) higher than that of the lowest responsible nonresident bidder.

[¶6] WWC sought an order enjoining the Commissioners from awarding the Horse Creek Road contract to any other bidder, awarding WWC the contract, and declaring WWC to be the responsible certified resident with the lowest bid and, therefore, entitled to the contract. WWC also asked the district court to find that the Commissioners breached the duty of good faith and fair dealing when they did not award the contract to the responsible certified resident with the lowest bid.

[¶7] With its complaint, WWC filed a motion for temporary restraining order or preliminary injunction asking the district court to rescind any contract the Commissioners had awarded for the project.[1] The Commissioners opposed the motion claiming, among other things, that they had reserved the right to reject any bid and had rejected WWC's bid because it did not submit a bond in the amount of ten percent of its bid as required by the bid instructions and invitation. They further asserted they awarded the contract to the second lowest bidder because it was a local contractor, its bid was only $8,000 more than WWC's and they believed it was "in the best interest of the project to support the local economy by awarding the project to [the second lowest bidder]."

---

[1] Actually, WWC's original complaint asked the district court to prohibit the Commissioners from entering into a contract with any other party while the case was pending. After WWC became aware that the Commissioners had awarded the contract to the second lowest bidder, it modified its claim by asking the district court to rescind the contract.

[¶8]   The district court convened a hearing and heard the parties' arguments for and against the motion.   It subsequently issued a decision denying the motion for temporary relief.  Based upon the testimony and evidence presented, the district court concluded it did not have the authority to require the Commissioners to contract with WWC or to prevent them from contracting with another bidder; the record was insufficient to show whether the contract awarded or WWC's bid were valid or invalid; and WWC had failed to demonstrate that it was entitled to a temporary restraining order or injunctive relief. The district court subsequently entered an order consistent with its decision.

[¶9]  The Commissioners then filed a motion for summary judgment asking for judgment as a matter of law on all of WWC's claims.  WWC also filed a motion seeking partial summary judgment on its claim for breach of the covenant of good faith and fair dealing. After a hearing on the motions, the district court granted the Commissioners' motion. The district court entered an order reaffirming its prior ruling on WWC's claims for a temporary restraining order or injunctive relief.  The district court also held there was no contract between WWC and the Commissioners to support the claim for breach of the covenant of good faith and fair dealing.  Finally, the district court denied WWC's claim for declaratory relief finding that the Commissioners did not act illegally, arbitrarily or capriciously in awarding the contract to the second lowest bidder.  Rather, the court concluded, the Commissioners made a legitimate executive decision to award the contract to a company other than WWC.  WWC timely appealed the district court's order.

## STANDARD OF REVIEW

[¶10]  We review a district court's order on summary judgment *de novo*.  *Carnahan v. Lewis*, 2012 WY 45, ¶ 10, 273 P.3d 1065, 1070 (Wyo. 2012).

## DISCUSSION

[¶11]  WWC contends that § 16-6-102(a) required the Commissioners to award the Horse Creek Road contract to the responsible certified Wyoming resident making the lowest bid.  Because it was the responsible certified resident that submitted the lowest bid, WWC asserts the Commissioners acted in contravention of the statute when they awarded the contract to a contractor that submitted a higher bid.  WWC contends § 16-6-102 was intended to prohibit counties from creating their own preference system for local contractors.  In support of its argument, WWC cites *Green River v. DeBernardi*, 816 P.2d 1287 (Wyo. 1991).

[¶12]  In *DeBernardi*, the City of Green River published notice for bids for a project involving the installation of a water main.  *Id*. at 1288.  The notice provided that a five percent preference would be given to Wyoming contractors in accordance with § 16-6-102.  *Id*.  The notice did not mention any additional preference.  *Id*.  However, the City had adopted a policy of giving a ten percent preference to Green River businesses.  *Id*. at

3

1289.  DeBernardi, a contractor based in Rock Springs, submitted a bid for $32,665.  *Id.*  Davis, a Green River contractor, submitted a bid for $35,773.  *Id*.  The City awarded the contract to Davis and DeBernardi filed a complaint alleging that the bid was awarded in contravention of § 16-6-102.  The district court concluded § 16-6-102 preempted the field of residential preferences; therefore, the City's policy of giving a ten percent preference to local businesses violated Wyoming public policy and the statute.  *Id.*  On appeal, this Court affirmed.

[¶13] WWC contends the Commissioners' award of the contract to a higher bidder based upon a preference for a local contractor violates the plain language of § 16-6-102(a) and the Court's ruling in *DeBernardi*.  The Commissioners argue that while *DeBernardi* makes clear that only the State and not a municipality can enact laws setting preferences for awarding public works contracts, neither the case nor the statute prohibits a county from exercising its discretion to award a multi-million dollar contract to a local business in an effort to assist the local economy, particularly when the difference in the low bids is minimal.

[¶14] We conclude the interpretation given § 16-6-102(a) in *DeBernardi* is inconsistent with the clear legislative intent.  We, therefore, overrule *DeBernardi*.  In doing so, we are aware that our jurisprudence recognizes a strong interest in adhering to past precedent under the doctrine of stare decisis.  *Arnott v. Arnott,* 2012 WY 167, ¶ 29, 293 P.3d 440, 453 (Wyo. 2012).  However, our jurisprudence also recognizes that departure from precedent is sometimes appropriate.  *Id.*  When precedential decisions are poorly reasoned, we should not feel compelled to follow them.  *Brown v. City of Casper*, 2011 WY 35, ¶ 43, 248 P.3d 1136, 1146 (Wyo. 2011).  Simply put, stare decisis does not require automatic conformance to past decisions when a decision is contrary to law.  In the instant case, we conclude *DeBernardi*'s holding that § 16-6-102 preempts the field of residential preferences in the context of bidders who are both Wyoming residents is contrary to the legislature's clear intent.  We conclude instead that § 16-6-102 has no application in that context.  Rather, it applies only in the context of competing bids from a resident and a non-resident contractor.

[¶15] In reaching this result we apply our usual rules of statutory construction:

> [Our] paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute.  We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous.  A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.  Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

4

*Barlow Ranch, LP v. Greencore Pipeline Co., LLC*, 2013 WY 34, ¶ 18, ___ P.3d ____, ____ (Wyo. 2013), citing *Michael's Constr., Inc. v. Am. Nat'l Bank*, 2012 WY 76, ¶ 12, 278 P.3d 701, 705 (Wyo. 2012). The determination of whether a statute is clear or ambiguous is a matter of law for the court. *Id*. When the language is clear, we give effect to the ordinary and obvious meaning of the words employed by the legislature. *Id*. In ascertaining the meaning of a statutory provision, all statutes relating to the same subject or having the same general purpose must be considered in *pari materia* and construed in harmony. *Id*.

[¶16] Section 16-6-102 is found in Title 16, Chapter 6, Article 1 of the Wyoming Statutes which covers public works and contracts. The first seven sections of Article 1 are focused on giving Wyoming contractors and Wyoming materials preference on Wyoming public works projects. Section 16-6-101 defines resident for purposes of Article 1 in pertinent part as:

> (i) "Resident" means a person, partnership, limited partnership, registered limited partnership, registered limited liability company or corporation certified as a resident by the department of employment following receipt of an affidavit executed by the president of the company or his designee of compliance with this act and prior to bidding upon the contract or responding to a request for proposal, subject to the following criteria:
>
> . . . .
>
> (C) A corporation organized under the laws of the state:
>
> (I) With at least fifty percent (50%) of the issued and outstanding shares of stock in the corporation owned by persons who have been residents of the state for one (1) year or more prior to bidding upon the contract or responding to a request for proposal;
>
> (II) Which has maintained its principal office and place of business within the state for at least one (1) year; and
>
> (III) The president of the corporation has been a resident of the state for one (1) year or more immediately prior to bidding upon the contract or responding to a request for proposal.

Section 16-6-102 requires a county, in a situation where advertisement for bids is not required, to award the bid to a Wyoming resident. When advertisement for bids is

required, the provision requires that the bid be awarded to the lowest resident bidder unless his bid is more than five percent higher than that of the lowest responsible nonresident bidder.

[¶17] Contrary to the holding in *DeBernardi*, § 16-6-102 does not address nor does its plain language suggest it was intended to address the situation where two Wyoming residents are the low bidders. Rather, the purpose of the provision, like the other six sections at the beginning of Article 1, is to encourage in-state industry. *Galesburg Constr. Co. v. Board of Trustees of Mem. Hosp. of Converse County*, 641 P.2d 745, 750 (Wyo. 1982). More specifically:

> By giving Wyoming corporations a handicap in bidding on public contracts, the statute in essence increases the likelihood that a Wyoming corporation will be awarded the contract. When contracts are awarded to Wyoming corporations, as opposed to out-of-state corporations, local industry is encouraged. This contributes to, strengthens, and stabilizes the state and local economy-the primary interest is that of the public. . . . The money payable under the contract is more likely to remain within the state, and enhance the tax base of state and local government.

*Id*. Section 16-6-102 simply has no application in the context of two resident contractors.

[¶18] The question is where does that leave WWC and the Commissioners with respect to the Horse Creek Road project? On the record before us, we cannot answer that question because no evidence was presented showing where the funds came from to pay for the project and, consequently, we do not know what statutory provision, if any, is applicable. Among the possibilities are Wyo. Stat. Ann. § 24-2-108 (LexisNexis 2011), which applies to road work "any part of the cost of which is paid from the state highway fund"[2] and provides that work costing more than $200,000 "shall be constructed under contracts awarded after public notice to the lowest responsible bidder." That provision

---

[2] Wyo. Stat. Ann. § 24-1-118 (LexisNexis 2011) provides:

> Excepting as such work may be performed through mutual agreement with other entities, either public or private, the construction and maintenance of all state highways . . . shall be performed at the expense of the state and by and under the supervision of the [state transportation] commission and the director of the department of transportation or his authorized representative.

Wyo. Stat. Ann. § 24-1-119 (LexisNexis 2011) creates the state highway fund and makes the monies in the fund available for road construction or improvement in the state.

may not be applicable to county roads and whether such funds were utilized is a fact that is not answered by the record presented.

[¶19] Another possibility is Wyo. Stat. Ann. § 24-2-110 (LexisNexis 2011) which requires county commissioners to establish a separate road construction and maintenance fund for constructing and maintaining county roads. Under that provision, competitive bidding is required for any work with an estimated cost over $50,000. During the oral argument in this Court, a question was raised about whether another statute applied. The Commissioners stated they would supplement their argument by submitting a citation to another statute. The Commissioners submitted a letter citing § 24-2-110 but stated Sublette County had not received funding under that provision. Other than this post-argument assertion, there is nothing in the record to support a finding by this Court as to the applicability of § 24-2-110.

[¶20] If neither § 24-2-110 or § 24-2-108 applies, there may be another applicable statute. In any event, until evidence is presented showing where the money came from to pay for the Horse Creek Road project, a judicial determination as to the appropriateness of the bid award is not possible. We, therefore, remand the case to the district court for presentation of evidence and a determination of whether the award was appropriate.

[¶21] Reversed and remanded for proceedings consistent with this opinion.