2015 WY 77

**WESTERN WYOMING CONSTRUCTION
CO., INC., Appellant (Plaintiff),**

v.

**BOARD OF COUNTY COMMISSIONERS
OF the COUNTY OF SUBLETTE, State
of Wyoming, Appellee (Defendant).**

No. S–14–0264.

Supreme Court of Wyoming.

May 27, 2015.

Representing Appellant: Katharine McKay of Hooper Law Offices, PC, Lander, WY.

Representing Appellee: Judith Studer of Schwartz, Bon, Walker & Studer, LLC, Casper, WY.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

HILL, Justice.

[¶ 1] This case comes before the Court for a second time. The material facts remain generally unchanged and undisputed. Appellant, Western Wyoming Construction Co., Inc. (WWC), submitted a bid for a highway project in Sublette County, Wyoming and was the low bidder. The Board of County Commissioners of Sublette County (Commissioners), however, awarded the contract to another company, R.S. Bennett Construction Co., Inc. (R.S. Bennett). In the prior appeal, WWC challenged the district court's award of summary judgment in favor of the Commissioners, arguing that the Commissioners' award of the contract was an abuse of discretion under Wyo. Stat. Ann. § 16–6–102(a). *W. Wyo. Constr. Co. v. Bd. of County Comm'rs,* 2013 WY 63, 301 P.3d 512 (Wyo. 2013) (*WWC I*). This Court held Wyo. Stat. Ann. § 16–6–102(a) inapplicable and reversed and remanded the case for further factual development to determine if any statute governed the award of the contract and to determine whether the award was appropriate. *Id.*

[¶ 2] On remand the district court found the Commissioners' award to be within their discretion and appropriate holding generally in favor of the Commissioners. WWC appeals and we again reverse and remand for further proceedings consistent with this opinion.

### ISSUE

[¶ 3] WWC presents the issue for this Court's consideration as follows:

Whether it is an abuse of discretion for a county to refuse to award a public works contract to the lowest responsible bidder, where the project has been let for competitive bid, on the basis that the next lowest bid is not significantly higher and was submitted by a bidder from the same county.

The Commissioners restate this issue as follows:

Was the trial court's determination that the Commissioners' decision to award the contract to the second lowest bidder, done in good faith and within their discretion, clearly erroneous as a matter of law?

[¶ 4] The Commissioners also raise issues concerning the validity of WWC's additional claims of promissory estoppel, equitable estoppel, and negligent misrepresentation, as well as WWC's ability to raise these additional claims. However, these issues are not properly before this Court and, accordingly, we decline to make a ruling at this time.

## FACTS

[¶ 5]  Much of the factual background of this case is described in *WWC I*. However, in order to adequately present the issues before this Court a certain amount of repetition is unavoidable.

[¶ 6]  On September 6, 2011, Sublette County issued an invitation for bids for a reconstruction project on Horse Creek Road (the Project) located in Sublette County. WWC, a contractor based out of Lander, Wyoming, submitted the low bid of $4,232,854.50.[1]  R.S. Bennett, a firm based out of Sublette County, submitted the next lowest bid of $4,241,074.10.  Despite its bid being approximately $8,000 higher, the Commissioners awarded the contract to R.S. Bennett.

[¶ 7]  In October of 2011 WWC filed a complaint in the district court alleging that by not entering into the contract with WWC, the Commissioners violated Wyo. Stat. Ann. § 16–6–102(a)[2] and that the Commissioners were obligated to enter into the contract with WWC. WWC's complaint included claims for injunction, specific performance, declaratory judgment, and a finding of a breach of the duty of good faith and fair dealing.  In a series of rulings and without a trial the district court found in favor of the Commissioners on all claims and concluded that the Commissioners made a legitimate executive decision to award the contract to a company other than WWC.

[¶ 8]  On appeal to this Court we held that § 16–6–102 had no application in the context of two resident contractors. "Rather, [Wyo. Stat. Ann. § 16–6–102] applies only in the context of competing bids from a resident and non-resident contractor." *WWC I*, ¶ 14, 301 P.3d at 515.  Due to a lack of evidence showing whether any other statute applied to the award of the contract, we were unable to determine whether the bid award was appropriate and we remanded the case for a "presentation of evidence and a determination of whether the award was appropriate." *Id.*, ¶ 20, 301 P.3d at 517.

[¶ 9]  The Invitation for Bids and Instructions to Bidders (bid documents) provided by Sublette County contained provisions governing the bidding and bid selection process. Specifically, section 17 of the Instructions to Bidders entitled AWARD OF CONTRACT provided the instructions and parameters for the awarding of the contract.  In pertinent part, Section 17 states:

17.1  OWNER reserves the right to reject any and all bids, to waive any and all informalities and to negotiate contract terms with the successful BIDDER, and the right to disregard all nonconforming, nonresponsive, unbalanced or conditional bids.  Also, OWNER reserves the right to reject the bid of any BIDDER if OWNER believes that it would not be in the best interest of the project to make an award to that BIDDER, whether because the Bid is not responsive or the BIDDER is unqualified or of doubtful financial ability or fails to meet any other permitted standard or criteria established by OWNER.  Discrepancies in the multiplication of units of Work and unit prices will be resolved in favor of the unit prices.  Discrepancies between the indicated sum of any column of figures and the correct sum thereof will be resolved in favor of the correct sum.

17.2  In evaluating Bids, OWNER will consider the qualifications of the BIDDERS, whether or not the Bids comply with the prescribed requirements, and such alternates, unit price and other data, as may be if requested in the Bid Form or prior to the Notice of Award.  This project

---

1.  WWC's bid, as submitted, was actually not the low bid.  Project engineers noticed and corrected the miscalculation resulting in WWC becoming the low bidder.

2.  Wyo. Stat. Ann. § 16–6–102(a) (LexisNexis 2013) states in pertinent part:

    **Resident contractors; preference limitation with reference to lowest bid or qualified response[.]**

    (a) If a contract is let by … any county … for any public work or improvements, the contract shall be let, if advertisement for bids or request for proposal is not required, to a resident of the state.  If advertisement for bids is required, the contract shall be let to the responsible certified resident making the lowest bid if the certified resident's bid is not more than five percent (5%) higher than that of the lowest responsible nonresident bidder.

will be administered under the requirements of Wyoming Statute 15–1–113.

17.3 OWNER may consider the qualifications and experience of Subcontractors, Suppliers, and other persons and organizations proposed for those portions of the Work as to which the identity of Subcontractors, Suppliers, and other persons and organizations must be submitted. OWNER also may consider the operating costs, maintenance requirements, performance data and guarantees of major items of materials and equipment proposed for incorporation in the Work when such data is required to be submitted prior to the Notice of Award.

17.4 OWNER may conduct such investigation as OWNER deems necessary to assist in the evaluation of any Bid and to establish the responsibility, qualifications and financial ability of the BIDDER's proposed Subcontractors and other persons and organizations to do the Work in accordance with the Contract Documents to OWNER's satisfaction within the prescribed time.

17.5 If the contract is to be awarded, it will be awarded to the lowest BIDDER whose evaluation by OWNER indicates to OWNER that the award will be in the best interest of the Project.

[¶ 10] While none of the bid documents required a formal rejection of bids, WWC was never told in any manner that its bid was rejected nor was WWC given any reason for why its bid may have been rejected. Rather, the decision to award the contract to R.S. Bennett was motivated by a known and undisclosed local preference. According to Joel E. Bousman, Chairman of the Board of County Commissioners, the Commissioners awarded the contract to R.S. Bennett due to the fact that R.S. Bennett was a local contractor and "given the approximate $8,000 difference in the bid amounts, the Commissioners believed that it was in the best interest of the project to support the local economy by awarding the project to R.S. Bennett Construction Co., Inc." Furthermore, at trial and in response to questions concerning the lack of notice to bidders that a preference would be given to Sublette County contrac-

tors, Mr. Bousman stated that "[i]f [the commissioners] did that we would probably not get any bids from anybody that didn't reside in the county and we wouldn't [ ] be able to compare what our options were."

[¶ 11] Following trial, the district court found generally in favor of the Commissioners. Based upon the testimony and evidence, the district court concluded that it did not have the authority to require the Commissioners to contract with WWC or the authority to prevent the Commissioners from contracting with any other party. The district court then found that the only statute applicable to the award of the contract was Wyo. Stat. Ann. § 15–1–113 insofar as it was referenced in the bid documents; and that WWC failed to satisfy its burden of proving that the Commissioners' decision to award the contract to R.S. Bennett was an illegal exercise of discretion. WWC timely appealed the district court's judgment.

## STANDARD OF REVIEW

[¶ 12] When reviewing the factual findings of a district court following a bench trial, those factual findings are not entitled to the limited review afforded to a jury verdict. While the factual findings are presumed correct, we may examine and consider all properly admissible evidence in the record. *Strong Const., Inc. v. City of Torrington,* 2011 WY 82, ¶ 9, 255 P.3d 903, 907 (Wyo. 2011) (citing *Piroschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005)).

> Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

Findings may not be set aside because we would have reached a different result. Further,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Strong Const., Inc.,* ¶ 9, 255 P.3d at 907(internal citations omitted).

[¶ 13] Finally, to the extent that this appeal raises questions of law, those questions are reviewed *de novo. Ramsdell v. State,* 2006 WY 159, ¶ 11, 149 P.3d 459, 462 (Wyo.2006).

## DISCUSSION

### I.

[¶ 14] Pursuant to Wyo. Stat. Ann. § 18-2-101(a)(iv) an organized county in Wyoming has the authority to enter into contracts through its County Commissioners. Section 18-2-101(a)(iv) reads:

(a) Each organized county in the state is a body corporate and politic. The powers of the county shall be exercised by a board of county commissioners which may:

. . . .

(iv) Make contracts and perform other acts relating to the property and concerns of the county in the exercise of its corporate or administrative powers[.]

Wyo. Stat. Ann. § 18-2-101(a)(iv) (LexisNexis 2013).

[¶ 15] In *WWC I,* while we rejected the applicability of § 16-6-102 to the Commissioners' contracting decision in this case, we questioned whether other statutory provisions might restrict the Commissioners' decision. *WWC I,* ¶¶ 18-19, 301 P.3d at 516-17. In particular, although we did not limit our remand to the source of funding, we did question whether the source of the funding for the Project imposed restrictions on the Commissioners' award of the contract. Specifically, we questioned the applicability of Wyo. Stat. Ann. §§ 24-2-108 and 24-2-110. *Id.*

[¶ 16] In its decision, the district court correctly noted the limited applicability of statutory provisions to the Commissioners' decision in this case. Regarding potentially applicable statutes, the district court found:

a. Based upon the evidence and testimony before the Court, Wyo. Stat. Ann § 24-2-108 does not apply to this case because the funds paid for the Project were not paid from the State Highway Fund as provided by Wyo. Stat. Ann. § 24-2-108.

b. Based upon the evidence and testimony before the Court, Wyo. Stat. Ann. § 24-2-110 also does not apply to this case because the funds paid for the Project were not paid from "a separate road construction and maintenance fund solely for the construction and maintenance of county roads, bridges and culverts," as provided by Wyo. Stat. Ann. § 24-2-110.

c. The Wyoming Supreme Court held that Wyo. Stat. Ann. § 16-6-102 is not applicable here. *See W. Wyoming Constr. Co., Inc.,* 2013 WY at ¶ 17, 301 P.3d at 516.

The district court also correctly analyzed and determined inapplicable Wyo. Stat. Ann. § 18-6-202 which applies to the construction of jails and Wyo. Stat. Ann. § 24-2-108 which applies only to county bridge work. Finally, the district court found that "Wyo. Stat. Ann. § 15-1-113 applies to this case insofar as this statute was referenced in [bid documents]." The parties do not take issue with these findings.

[¶ 17] By its very language, § 15-1-113 applies to contracts awarded by cities and towns rather than counties. However, through its reference in the Instructions to Bidders Section 17.2, which states that the "project will be administered under the requirements of Wyoming Statute 15-1-113," § 15-1-113 has some applicability to the Commissioners' award of the contract. We are particularly concerned with subsection (c) of § 15-1-113 which states "[i]f the contract is let for bid, the contract shall be let to the lowest bidder who shall be determined qualified and responsible in the sole discretion of the governing body." Wyo. Stat. Ann. § 15-1-113(c) (LexisNexis 2013). Today, we therefore must analyze the Commissioners'

exercise of its discretion in light of the bidding documents and § 15–1–113(c).

▆▆▆ [¶ 18] Acting as an administrative agency and as an arm of the executive branch the Commissioners are granted considerable discretion in contracting decisions. *See State v. Weisz & Sons*, 713 P.2d 176, 184–186 (Wyo.1986). WWC argues that the use of a known and unannounced criterion of residency to decide to whom to award a public contract constitutes an abuse of that discretion. For the following reasons we agree.

[¶ 19] Whenever a court is asked to review the decision of a part of the executive branch it must be mindful of the doctrine of separation of powers. The foundation of this doctrine is found in Article 2 of the Wyoming Constitution:

> The powers of the government of this state are divided into three distinct departments: The legislative, executive, and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

It is a fundamental of law that a court must be wary of inappropriately intruding upon the realm of the executive branch. Before a court,

> as part of the judicial branch, decides to step in an interfere with an action of the executive branch, it must somehow skirt around the forbidden territory under dominion of the executive branch. There is a very tightly circumscribed corridor through which the judiciary must pass before it can act to control representatives or agencies in their conduct of [their] business.

*Weisz & Sons*, 713 P.2d at 184.

▆▆▆ ▪ [¶ 20] A court is warranted in setting aside the action of an administrative agency only where its action is arbitrary, fraudulent or otherwise an illegal exercise of discretion. *Weisz & Sons*, 713 P.2d at 184; *Whitlock Constr., Inc. v. S. Big Horn County Water Supply Joint Powers Bd.*, 2002 WY 36, ¶ 35, 41 P.3d 1261, 1269 (Wyo.2002); *Bixby v. Cross*, 384 P.2d 710 (Wyo.1963); *Marathon Oil Co. v. Welch*, 379 P.2d 832 (Wyo. 1963). *Banzhaf v. Swan Company*, 60 Wyo. 201, 148 P.2d 225 (1944), approved *Miller v. Hurley*, 37 Wyo. 344, 262 P. 238 (1927). As stated in *Miller*, the general rule is that the agency's discretion should control except when the court finds an illegal exercise of discretion, fraud, or a grave abuse of discretion. *Miller*, 262 P. at 241. An illegal exercise of discretion occurs when the agency employs selection criteria not disclosed in the specifications for bidding. *See City of Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 423 N.E.2d 1095, 1097 (1981); *see also Ritchie Paving, Inc. v. City of Deerfield, Kansas*, 275 Kan. 631, 67 P.3d 843, 849 (2003) (finding that the City "was not acting within established bidding procedures by basing the award on factors that were not disclosed in the bid documents"); *City of Sweetwater v. Solo Const. Corp.*, 823 So.2d 798, 802 (Fla. Dist.Ct.App.2002) ("[T]he City's decision to award the contract … was arbitrary and capricious and based upon criteria that were neither included in the bid documents nor clearly defined in any manner whatsoever."); 10 McQuillin Mun. Corp. § 29:85, *Awarding contracts; discretion—To other than lowest bidder—Residents* (3d ed. 2015) ("Where the contract is to be awarded to the 'lowest and best' bidder, rejection of the low bid by a nonresident and an award to the second lowest bidder on the basis of residence within the city is an abuse of discretion where residency as a criterion is not announced until after opening of the bids.").

[¶ 21] Under our prior decisions in deciding whether to intrude into the affairs of the executive this Court has looked for dishonesty, bad faith, illegality, and oppressiveness of the part of the agency. In essence, in application to agency conduct, a reversible "abuse of discretion" occurs through "illegal and other conduct smacking of censurable behavior, justifying judicial intervention." *Weisz & Sons*, 713 P.2d at 185. The question for this Court then is whether the Commissioners' process of awarding the contract contained sufficient arbitrariness, bad faith, and/or dishonesty to render it such censurable behav-

ior as to constitute an illegal exercise of discretion.

[¶ 22] While the Commissioners were not statutorily required to put the Horse Creek Road project up for competitive bidding, the Commissioners nevertheless did elect to put the project up for competitive bid. By making such an election the Commissioners became bound by the principles of competitive bidding. In discussing bidder compliance with bidding requirements we have held that the underlying policy of competitive bidding is to put each bidder upon the same footing and in fair competition with each other. *Weisz & Sons*, 713 P.2d at 186 (citing *Inn Operations v. River Hills Motor Inn Co.*, 261 Iowa 72, 152 N.W.2d 808, 817 (Iowa 1967)). We find this policy equally applicable when it comes to judging an abuse of discretion in the selection of a bid.

[¶ 23] In making their decision to award the Project to R.S. Bennett, the Commissioners utilized an undisclosed preference for Sublette County contractors. This preference was not only unannounced to the bidders but also, according to testimony at trial, it was known to the Commissioners and intentionally concealed. The Supreme Court of Ohio heard a strikingly similar case to this in *Scandrick*, 423 N.E.2d 1095 in which the city of Dayton solicited bids for the construction of a recreation center. Under the applicable ordinance, the city was required to either reject all bids or award the contract to the "lowest and best" bidder. *Id.* at 1096. After receiving bids, the lowest two were extremely close and since the higher of the two bids came from a resident of the city, the city elected to go with the higher bid due to an unannounced residency criterion. *Id.* In holding the award an abuse of discretion the Ohio Court relied on the fact that the city "made a conscious decision to withhold [ ] pertinent information," "[i]n effect, [ ] modified their requirements without notice[,]" and "undermine[d] the integrity of the competitive bidding process." *Id.* at 1097. Also critical to the *McGee* court was the inherent arbitrariness of having no guidelines or established standards to decide how many percentage points a resident bid may exceed the low bid and still qualify as the "lowest and best bid." *Id.* at 1098.

[¶ 24] Likewise, in this case the Commissioners have committed a similar abuse of discretion. In the instructions to bidders the Commissioners stated that (1) the award of the contract would be in accordance with § 15–1–113 which requires the contract to be awarded to the lowest bidder deemed qualified and responsible by the governing body, and (2) if the contract is to be awarded, it will be to the lowest bidder who the Commissioners deem to be in the best interest of the project. In effect, the Commissioners retained their discretion to award the contract to the lowest bidder that they deemed to be responsible, qualified, and in the best interest of the project. The Commissioners did not in any way indicate that county of residence would play a role in awarding the contract.

[¶ 25] Although the difference in the bid amounts was slight—just over $8,000 in a $4,000,000 project—the Commissioners relied on an undisclosed residency criterion to award the contract to R.S. Bennett. Moreover, the Commissioners intentionally withheld the disclosure of this criterion. Like in *Dayton ex rel. Scandrick, supra*, the Commissioners' actions undermined the integrity of the competitive bidding process by granting a hidden advantage to local contractors and unleveling the bidder playing field. Making matters worse is the intentional withholding of pertinent information from bidders. Still perhaps most problematic is the arbitrary nature of the local preference. Under Black's Law Dictionary, "arbitrary" means "without adequate determining principle; . . . not governed by any fixed rules or standard." Black's Law Dictionary (1997 5th ed.). Like in *Scandrick, supra*, the Commissioners could not articulate a standard for deciding when a "local" bid could be higher than another bid but still be in the best interest of the project. Allowing for an agency to make decisions based upon a preference absent any standards or guidelines, especially an undisclosed preference, confers unfettered discretion and is the very epitome of arbitrary.

[¶ 26] To be clear, we do not hold today that competitive bidding requires the selection of the lowest bid. Instead we reaffirm our prior holding that "[i]t is the responsibility of the public agency, which is charged with contracting, to accept a bid which, in its judgment, would provide the best project for the money." *Weisz & Sons,* 713 P.2d at 185. This grants considerable discretion to the agency in selecting a bid; a discretion that the Commissioners in this case clearly intended to retain through the bidding documents. However, this discretion is not unbridled or unlimited. "The presence of standards against which such discretion may be tested is essential; otherwise, the term 'abuse of discretion' would be meaningless." *Scandrick,* 423 N.E.2d at 1098. The damage here is not in preferring local contractors but in the arbitrariness and misguidance of the Commissioners utilizing and concealing a criterion with no established guidelines or standards for how it will be administered.

[¶ 27] We therefore hold that if the Commissioners wish to use a local preference in deciding whom to award the contract, they must disclose the nature of the preference to the bidders. Allowing an agency to utilize undisclosed standards without any guidance as to its significance or priority allows unbridled discretion and opens the door to political misconduct. Neither bidders nor the public are well served by such a situation. It is for these reasons that such agency action constitutes an illegal exercise of discretion which must be set aside.

## II.

[¶ 28] The Commissioners raise two issues on appeal concerning whether WWC has properly pled its claims for damages and whether such claims would be barred by the County's governmental immunity. The district court did not reach those issues because it bifurcated the trial into liability and damages stages and found no abuse of discretion in the Commissioners' award of the contract in• the first instance.· Because the issues have not been addressed by the district court, they are not properly before this Court. We therefore remand to the district court for consideration of whether WWC has properly pled its claims for damages and if so, whether any such claim is viable in light of the County's defenses, including but not limited to its governmental immunity.

## CONCLUSION

[¶ 29] We hold that the Commissioners' utilization of the known and unannounced criteria of county of residence in awarding a public contract opened for competitive bid constituted an illegal exercise of discretion. We further hold that under the facts and circumstances of this case, we are unable to determine whether an award of damages is appropriate, and we remand this case to the district court to conduct proceedings as it sees fit for determining damages.

[¶ 30] Reversed and remanded for proceedings consistent with this opinion.